Jasen, J.
 

 This action, based on negligence and breach of warranty, comes to us in the pleadings stage for a determination as to whether jurisdiction was validly acquired over the defendant, Volkswagenwerk AG of Wolfsburg, Germany, a German corporation, hereinafter referred to as VWAG.
 

 The plaintiff in his complaint alleges that, in 1965, he purchased a Volkswagen automobile from an authorized Volkswagen dealer in Germany. While operating said vehicle in Germany, plaintiff claims that
 
 “
 
 the front wheel suspension and its appurtenant parts broke and collapsed, causing the front wheels to cave in and the motor vehicle to run out of control and hit a bridge abutment with such force as to cause [him] serious injuries ”.
 

 Upon his return to the United States, plaintiff brought suit in New York against VWAG, alleging that
 
 “
 
 the defendant transacted sufficient of its business within the State of New York to subject itself to the jurisdiction of the courts of this State.”
 
 *430
 
 Service of process was made on the defendant, pursuant to CPLR 313, in Germany.
 

 The following facts are not in dispute. Defendant, VWAG, a German corporation, manufactures and sells, in Germany, Volkswagen automobiles and parts. VWAG has never qualified to do business in New York and has no office or place of business here. VWAG exports its automobiles into the United States through Volkswagen of America, Inc. (VWoA), a New Jersey corporation, which is a wholly owned subsidiary of VWAG
 
 [1]
 
 and the exclusive American importer of Volkswagen automobiles. Likewise, VWoA has never qualified to do business in New York and has no office or place of business here. After these cars arrive in the United States at various ports, none of which are in New York, they are resold to 14 wholesale distributors franchised by VWoA. These distributors take title to the vehicles at the delivery point and, in turn, reship the cars to local independent franchised dealers. In New York State, the franchised wholesale distributor is World-Wide Volkswagen Corp. (WorldWide). The entire capital stock of World-Wide and its New York franchised dealers is owned by United States investors unrelated to either VWoA or VWAG.
 

 Plaintiff does not claim that his cause of action arose from the German corporation’s direct transaction of any business in New York in order to bring the defendant within the jurisdiction of our courts pursuant to CPLR 302 (subd. [a], par. 1), but argues that jurisdiction was properly acquired over the defendant VWAG because it is “ engaged in a systematic and regular course of business ” in New York which subjects it to our jurisdiction pursuant to CPLR 301.
 

 Our most recent pronouncement in this area of the law,
 
 Frummer
 
 v.
 
 Hilton Hotels Int.
 
 (19 N Y 2d 533), reiterated the rule that a foreign corporation is amenable to suit in our courts if it is engaged in such a continuous and systematic course of
 

 
 *431
 
 “ doing business ” in New York as to warrant a finding of its
 
 “
 
 presence ’ ’ in this jurisdiction.
 
 Frummer
 
 held that Hilton (U. K.) was “ doing business ” in New York in the “ traditional sense” because of services performed—specifically publicity work and the making of final room reservations — by the Hilton Reservation Service as agent for Hilton (U. K.). The affiliate relationship existing between the Reservation Service and Hilton (U. K.)
 
 [2]
 
 was significant only as it gave rise to an inference of an agency relationship. This “ valid inference ’ ’ may not, however, extend the actual scope of the agency.
 
 [3]
 

 “
 
 The ' presence ’ of Hilton (U. K.) in New York,” Chief Judge Fuld wrote, “ for purposes of jurisdiction, is established by the activities conducted here on its behalf by its agent, the Hilton Reservation Service, and the fact that the two are commonly owned is significant only because it gives rise to a valid inference as to the broad scope of the agency in the absence of an express agency agreement such as the one which existed in the
 
 Berner
 
 case (3 NY 2d 1003,
 
 supra).” (Frummer
 
 v.
 
 Hilton Hotels Int., supra,
 
 at p. 538.)
 

 In the case before us, however, the undisputed facts do not give rise to a valid inference of agency. Concededly, WorldWide is an independently owned corporation, in no way directly related to VWAG-, and related to VWoA only by way of a “ Distributor Agreement ”, Under this agreement, World-Wide purchases Volkswagen automobiles and parts outright from VWoA, takes possession at dock in Newark, New Jersey, and resells same to local Volkswagen dealers in its franchise area of New York, New Jersey and Connecticut. Where, as here, there exists truly separate corporate entities, not commonly owned, a valid inference of agency cannot be sustained.
 

 One point remains — whether jurisdiction was properly acquired over VWAG by reason of the “control ” the foreign
 
 *432
 
 corporation exerts over World-Wide and the franchise dealers in the State. Specifically, plaintiff asserts that VWAG maintains a rigid control over World-Wide and its dealers by requiring": (1) sale by each dealer of a minimum number of automobiles upon penalty of forfeiture of their dealer franchise; (2) uniform design for dealer service departments; (3) service personnel to be trained in Germany; (4) uniform purchase and sales prices, and (5) prior approval of prospective dealers. In substance, plaintiff asserts that such control by the defendant manufacturer over its representatives in the State constitutes
 
 ‘ ‘
 
 doing business ’ ’ sufficient to warrant the inference of “ presence ”.
 

 Aside from the fact that these assertions are seriously disputed by the foreign corporation, this court has never held a foreign corporation present on the basis of control, unless there was in existence at least a parent-subsidiary relationship.
 
 (Taca Int. Airlines, S. A.
 
 v.
 
 Rolls-Royce of England,
 
 15 N Y 2d 97;
 
 Public Administrator of County of N. Y.
 
 v.
 
 Royal Bank of Canada,
 
 19 N Y 2d 127.) The control over the subsidiary’s activities, we held, must be so complete that the subsidiary is, in fact, merely a department of the parent. (See
 
 Public Administrator of County of N. Y.
 
 v.
 
 Royal Bank of Canada, supra.)
 
 Even if World-Wide were a subsidiary of VWAG, which it is not, the alleged control activities of VWAG would not be sufficient to make World-Wide a mere department of VWAG. (See, e. g.,
 
 Fergus Motors
 
 v.
 
 Standard-Triumph Motor Co.,
 
 130 F. Supp. 780.)
 

 Nor does advertising in New York media by VWoA permit a different result. Even if these activities by VWoA were to be found attributable to VWAG, they still would constitute no more than “ mere solicitation ”.
 
 (Miller
 
 v.
 
 Surf Props.,
 
 4 N Y 2d 475.)
 

 The court’s attention has been directed to
 
 Qelfand
 
 v.
 
 Tanner Motor Tours
 
 (385 F. 2d 116), where the plaintiffs, New York residents, were injured in the course of defendants’ package tours to the Grand Canyon. The only contact of defendant corporations to New York State was membership in a nonprofit corporation organized under Maryland law which, in turn, generated publicity and contracted with a New York travel agent who ‘ ‘ Until informed * * * that space was no longer
 
 *433
 
 available * * * confirmed reservations, except group reservations, without obtaining Las Vegas’ approval.”
 
 (Gelfand
 
 v.
 
 Tanner Motor Tours, sufra,
 
 at p. 119.) The nature of the agency relationship was clear in
 
 Gelfand,
 
 since the New York agent was authorized to make final reservations, rather than merely confirming availabilities, and the additional factor was present that the purchase of the tour tickets took place in New York. We would only add that mere sales of a manufacturer’s product in New York, however substantial, have never made the foreign corporation manufacturer amenable to suit in this jurisdiction. Thus, we conclude that VWAG- was not
 
 “
 
 doing business ” in New York in the traditional sense and, therefore, our courts did not acquire personal jurisdiction over the foreign corporation.
 

 The order of the Appellate Division should be reversed, without costs, and the certified question answered in the negative.
 

 Chief Judge Fuld and Judges Burke, Scileppi, Bergan, Breitel and Gibson concur.
 

 Order reversed, without costs, and the complaint dismissed. Question certified answered in the negative.
 

 [1]
 

 . The relationship between VWAG and VWoA is governed by a written agreement, designated “Exclusive Importer Agreement”, which states in pertinent part:
 

 “Exclusive Importer [VWoA] will transact all business pursuant to this Agreement on its own behalf and for its own account; it has no power or authority whatsoever to act as agent or otherwise for or on account or on behalf of VW [VWAG].?’
 

 [2]
 

 . Hilton (U. K.) was a wholly owned subsidiary of Hilton Hotels Int., Inc., a Delaware corporation, which was, in turn, a wholly owned subsidiary of Hilton Hotels Corporation, also a Delaware corporation. Hilton Hotels International and Hilton Hotels Corporation jointly owned the Hilton Credit Corp., a Delaware corporation, one branch of which was the Hilton Reservation Service.
 

 [3]
 

 . The Reservation Service represented, in addition to Hilton Hotels, 50 unaffiliated hotels.