Clarence H. McSHAN, Plaintiff-Appellant,

v.

OMEGA LOUIS BRANDT Et FRERE, S.A. and Societe Suisse Pour L'Industrie Horlogere Management Services, S.A., Defendants-Appellees.

No. 877, Docket 75–7654.

United States Court of Appeals, Second Circuit.

Argued April 20, 1976.

Decided May 26, 1976.

Solomon M. Lowenbraun, New York City, for plaintiff-appellant.

Henry L. Shenier, New York City (Shenier & O'Connor, William A. Kinnaman, Jr., New York City, of counsel), for defendants-appellees.

Before FRIENDLY, HAYS and MULLIGAN, Circuit Judges.

MULLIGAN, Circuit Judge:

Clarence H. McShan commenced an action for breach of contract on February 26, 1975 in the New York Supreme Court, Queens County, by service of a summons and complaint on the defendants at their principal offices in Bienne, Switzerland. On March 26, 1975 the defendants removed the action to the United States District Court for the Eastern District of New York by filing a petition and bond, 28 U.S.C. § 1446, on the basis of diversity of citizenship, 28 U.S.C. § 1332. On March 31, 1975, the defendants moved to dismiss the complaint for lack of jurisdiction over the person and for insufficient service of process under Rules 12(b)(2) and (5) of the Federal Rules of Civil Procedure. McShan then cross-moved to remand the action to the Supreme Court, Queens County where it had been commenced. By memorandum and order dated November 14, 1975, Hon. Mark A. Costantino, United States District Judge, granted the defendants' motion to dismiss the complaint and denied plaintiff's cross-motion to remand. This appeal by the plaintiff followed.

I

The defendant Omega Louis Brandt et Frere, S.A. (Omega) is a Swiss corporation having its principal place of business at Bienne, Switzerland. It manufactures and sells watches which bear the trademark Omega. The defendant Societe Suisse Pour L'Industrie Horlogere Management Services, S.A. (SSIH), is a Swiss corporation with its principal place of business also at Bienne, Switzerland. SSIH is commonly owned with Omega and provides management services to it and other affiliated corporations. Omega's watches are distributed in the United States by the Norman M. Morris Corporation (Morris), a New York corporation with its principal place of business in New York City. Morris is a wholly independent legal entity, neither owned nor controlled by Omega or SSIH. Morris purchases watches from Omega f. o. b. Switzerland and is licensed to use the trademark Omega in the United States. It is listed in the New York phone directory under the name "Omega Watch Company" and "Omega Watch Company Services."

On February 18, 1970, McShan, the owner of United States and foreign patents which relate to watch movements, entered into a license agreement with American Railroad Curvelining Corporation (ARC) whereby ARC acquired exclusive rights to manufacture, use and sell inventions covered by the McShan patents. ARC also obtained the right to sublicense and on March 6, 1970, sublicensed the McShan patents to Omega. This sublicense agreement was negotiated by mail, was signed in New York by ARC, and was then sent to Switzerland where it was executed by Omega. Neither Morris nor SSIH is a party to the agreement. ARC has assigned to McShan any rights it may have against Omega under the sublicense. The action below by McShan is based upon an alleged breach of the sublicense agreement between his assignor ARC and Omega. Some $300,000 in royalties is sought as damages.

II

Both defendants here were served in Switzerland under N.Y.C.P.L.R. § 313, which permits service on non-domiciliaries pursuant to its sections 301 or 302. Section 301 permits such service under the traditional "doing business" test which requires the performance of business here with a "fair measure of permanence and continuity." *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 267, 115 N.E. 915, 917 (1917). Neither Swiss defendant has an office or place of business here nor are they qualified to do business here. The only possible "presence" of defendants in New York is vicariously through Morris, an independent corporate entity which buys Omega's watches f. o. b. Switzerland. Under these circumstances, *Delagi v. Volkswagenwerk AG*, 29 N.Y.2d 426, 328 N.Y.S.2d 653, 278 N.E.2d 895 (1972) squarely holds that sales, no matter how substantial, of a foreign manufacturer's product in New York through an independent agency do not

make the foreigner amenable to suit in New York, even though the products are advertised in local media. Hence, the defendants are not "doing business" in New York in the traditional sense. We do not pursue the matter further since, although appellant's brief is not clear on this point, on the argument of this appeal any claim of presence by "doing business" in New York was abandoned.

■ The only possible claim of personal jurisdiction therefore must rest upon the so-called "long arm" statute, C.P.L.R. § 302. The pertinent subdivision (§ 302(a)(1)) * provides jurisdiction over a cause of action arising from the transaction of business in New York by a non-domiciliary or his agent. We note initially that the cause of action must arise from the transaction of business in New York. *Fontanetta v. American Board of Internal Medicine*, 421 F.2d 355 (2d Cir. 1970); *Gelfand v. Turner Motor Tours, Ltd.*, 339 F.2d 317 (2d Cir. 1964). The cause of action here alleged is the breach of the sublicense agreement entered into between ARC and Omega. That agreement was executed by Omega in Switzerland. The fact that ARC first signed the contract in New York before transmitting it for signature in Switzerland does not constitute any meaningful activity by *defendants* in New York. *Galgay v. Bulletin Co.*, 504 F.2d 1062, 1065 (2d Cir. 1974). The record is barren of any negotiation or other activity by the defendants in New York with respect to the sublicense. The record does indicate that SSIH and McShan conducted negotiations in New York to supersede and replace the sublicense agreement which is the subject of the present litigation. However, the negotiations did not succeed and the presence of SSIH officials here on an abortive mission in December, 1972, more than two years after the agreement now sued upon was entered into, does not constitute the transaction of business from which the present cause of action arose. *Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 443, 457, 261 N.Y.S.2d 8, 18, 209 N.E.2d 68, cert. denied, 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1965); *Lehigh Valley Industries, Inc. v. Birenbaum*, 527 F.2d 87, 92 (2d Cir. 1975). Compare the situation in *Sterling National Bank & Trust Co. v. Fidelity Mortgage Investors*, 510 F.2d 870 (2d Cir. 1975).

■ Appellant further argues that the sublicense agreement provides that it will be construed in accordance with and will be governed by New York law and that this somehow gives New York personal jurisdiction over the defendants. The law is well settled, however, that a choice of law provision in a contract does not constitute a voluntary submission to personal jurisdiction in New York. *Galgay v. Bulletin Co., supra*, 504 F.2d at 1066; *Agrashell, Inc. v. Bernard Sirotta Co.*, 344 F.2d 583, 588 (2d Cir. 1965).

Appellant's argument for jurisdiction eventually rests on the proposition that Morris is transacting business as Omega's agent in New York. The cause of action does not, however, arise from these 'transactions,' if such they be. Morris, as we have pointed out, is a total stranger to the sublicense agreement. What royalties Omega is obligated to pay McShan for watches manufactured in Switzerland under his patents is no business of Morris'. While Morris is buying Swiss-made Omega watches which presumably may be covered by McShan patents, the action here is bottomed upon Omega's failure to pay royalties to which Morris' relationship is totally tangential and incidental. See *Fontanetta v. American Board of Internal Medicine, supra;* McLaughlin, Practice Commentaries to CPLR § 302, at 63–65 (McKinney 1972).

Even if the dispute here arose between Omega and Morris or a customer of Morris involving the breach of a contract concern-

---

* "As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

   1. transacts any business within the state . . . . ."

ing the distribution of watches in New York, it is doubtful that Omega would be transacting business under section 302(a)(1). In *Kramer v. Vogl*, 17 N.Y.2d 27, 267 N.Y. S.2d 900, 215 N.E.2d 159 (1966), Chief Judge Desmond, writing for a unanimous court, held that Austrian defendants who sold merchandise f. o. b. European ports to a local distributor but who carried on no sales or advertising themselves in New York were not transacting business here within the statute. See also *McKee Electric Co. v. Rauland-Borg Corp.*, 20 N.Y.2d 377, 283 N.Y.S.2d 34, 229 N.E.2d 604 (1967).

Appellant points out that Omega and SSIH have stipulated to the entry of a consent decree in a Sherman Act (15 U.S.C. §§ 1, 4) case brought by the United States in the United States District Court for the Southern District of New York (Civil Action No. 76 Civ. 495). The complaint there alleged that Morris' exclusive dealership with Omega, SSIH and others violated section 1 of the Sherman Act. One of the jurisdictional allegations there is that the defendants transacted business in New York within C.P.L.R. § 302. Appellant argues that by consenting to the entry of a consent judgment, the defendants have admitted, and are now estopped to deny, their transaction of business in New York under section 302.

 The argument is without merit. As we have already indicated, section 302 requires that the cause of action on which suit is brought arise out of the transaction of business in this jurisdiction. The Sherman Act offense arises out of the transaction of business between the defendants and Morris, and has nothing to do with the payment of royalties to McShan which is at issue here. Aside from this, the antitrust judgment recites that entry has been consented to "without trial or adjudication of any issue of fact or law herein and without this Final Judgment constituting evidence or admission by any party with respect to any such issue."

Since the dispute in the Southern District involves other claims and other parties, upon familiar principles res judicata does not apply; and since jurisdiction was not litigated in the antitrust case, collateral estoppel does not act as a bar. See *Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955); *Commissioner v. Sunnen*, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948); *Cromwell v. County of Sac*, 94 U.S. 351, 24 L.Ed. 195 (1877); 1B J. Moore, Federal Practice ¶¶ 0.405[1], 0.441[1] (2d ed. 1974).

Alternatively, appellant contends that the district court should have remanded the action to the state supreme court for a determination of "what is above all a question of New York Law." Remand is proper when a federal court concludes that it lacks subject-matter jurisdiction of a removed case. *Amins v. Life Support Medical Equipment Corp.*, 373 F.Supp. 654, 656 (E.D.N.Y.1974). However where, as here, the defense is lack of personal jurisdiction under state law, the federal court has the same power and duty to entertain the defense and, if it finds this meritorious, to take appropriate action, as it would with respect to any other question of state law. See *Meredith v. Winter Haven*, 320 U.S. 228, 237, 64 S.Ct. 7, 88 L.Ed. 9 (1943).

The order below is affirmed.