LORIA & WEINHAUS, INC., Plaintiff,

v.

H. R. KAMINSKY & SONS,
INC., Defendant.

No. 78 Civ. 1533 (CHT).

United States District Court,
S. D. New York.

Dec. 6, 1978.

David Van Muraskin, New York City, for plaintiff.

Mills & Chasteen, Fitzgerald, Ga., James A. Math, Mineola, N. Y., for defendant; Ben B. Mills, Jr., Fitzgerald, Ga., of counsel.

## OPINION

TENNEY, District Judge.

■ This action was brought by Loria & Weinhaus, Inc. ("plaintiff"), a New York corporation, to recover commissions allegedly owed to it by H. R. Kaminsky & Sons, Inc. ("defendant"), a Georgia corporation. Defendant has moved for dismissal pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, asserting lack of personal jurisdiction, lack of venue, and failure to state a claim. This Court deems the last two assertions premature and will here consider only the jurisdictional question.[1]

---

1. Since "doing business" under the federal venue statute, 28 U.S.C. § 1391(c), is generally viewed as equivalent to "doing business" for purposes of establishing personal jurisdiction in New York, *Honda Assoc., Inc. v. Nozawa Trading, Inc.,* 374 F.Supp. 886, 889–90 (S.D.N.Y.1974), the venue issue raised here is essentially the same as the jurisdictional issue. In view of the disposition of the latter, any decision on the former would be premature.

Defendant's other argument for dismissal, *i. e.,* that plaintiff has failed to state a claim, is based on alternative arguments. Defendant maintains that either the contract under which plaintiff asserts its right to commissions is invalid or, if it is valid, an arbitration clause in that contract cuts off the present action. The parties seem to agree that a contract between them (including an arbitration clause) was operative for about a year, after which time it was rescinded by mutual agreement. The effect of that rescission on the parties' rights under the arbitration clause and with respect to uncompensated performance before and after the rescission will depend on the intent of the parties at the time of the rescission and the circumstances surrounding the rescission agreement. Corbin, *Contracts* § 1236, at 538,

Since subject matter jurisdiction is grounded in diversity of citizenship, this Court must ascertain whether defendant is amenable to suit in the present forum under the laws of New York. *Arrowsmith v. United Press Int'l*, 320 F.2d 219 (2d Cir. 1963). The burden of proving jurisdiction is on the party asserting it, and that party must show by the complaint and supporting affidavits the essential requirements of the relevant jurisdictional statutes. *Lehigh Valley Indus., Inc. v. Birenbaum*, 527 F.2d 87, 92 (2d Cir. 1975), *citing Lamarr v. Klein*, 35 A.D.2d 248, 250, 315 N.Y.S.2d 695, 697 (1st Dep't 1970), *aff'd mem.*, 30 N.Y.2d 757, 333 N.Y.S.2d 421, 284 N.E.2d 576 (1972).

The plaintiff corporation has submitted an affidavit by its president, Robert Weinhaus, in opposition to the defendant's motion to dismiss. In this affidavit, Weinhaus asserts that in January 1977 he entered a contract with defendant under which he became, in return for a 5% commission, defendant's exclusive national representative in the sale and distribution of defendant's products. Weinhaus states that during his association with defendant it has maintained an "office and showroom" in New York City at 10 West 33d Street and that "prior to this time" it maintained an "office" at 350 Fifth Avenue.[2] Weinhaus further maintains that Larry Kaminsky, acting as president of the defendant corporation, "periodically" visited New York to attend a biannual trade association show and that, during those visits, Kaminsky discussed with Weinhaus "sales and merchandising techniques necessary to promote the corporation's line." Weinhaus states that during his relationship with the defendant, he on "numerous occasions" negotiated with New York firms on behalf of defendant "in order to gain a better credit line, and to purchase necessary piece goods for the defendant."[3] Finally Weinhaus asserts that during 1977 defendant obtained well over $1.5 million worth of business on orders transacted in New York City through Weinhaus and that, from December 1977 to March 1, 1978, $157,000 worth of goods were sold to New York firms by defendant.

At this stage of the proceedings, plaintiff is required only to make out a prima facie case for the existence of jurisdiction. *Data Disc, Inc. v. Systems Technology Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). *See also Ghazhoul v. International Management Services, Inc.*, 398 F.Supp. 307, 309–10 (S.D.N.Y.1975); 4 Wright & Miller § 1068, at 250. In determining whether this has been accomplished, the pleadings and affidavits must be construed most favorably to plaintiff, as the party resisting the motion to dismiss.[4]

§ 1443. The materials currently in the record do not provide this Court with an adequate basis for assessing this intent. Even if they did, the parties have not provided the Court with sufficient information to determine the applicable substantive law. Finally, if this Court should determine that plaintiff's rights to commissions arising under the contract are subject to arbitration, *cf. H. M. Hamilton & Co. v. American Home Assurance Co.*, 21 A.D.2d 500, 251 N.Y.S.2d 215 (1st Dep't 1964), a question arises as to whether the $10,000 amount in controversy requirement of 28 U.S.C. § 1332(a) is met by plaintiff's remaining claims. The Court, of course, would be obliged to raise this question on its own motion. 4 Wright & Miller § 1063, at 203.

2. Defendant asserts, in an affidavit by its executive vice-president, that it does not maintain an office "in the Southern District of New York" and that its only contacts with New York "are in the shipping of various orders to customers which orders are received at its Fitz-gerald, Ga. plant. . . ." Although this assertion seems to create an issue of jurisdictional fact, this Court will, for present purposes, construe the affidavits most favorably toward the plaintiff as the non-moving party. *See* note 4 *infra*.

3. It does not appear that any of the contested commissions were paid or to be paid as a result of these negotiating services.

4. While a district court has the discretion to take evidence at a preliminary hearing to resolve contested issues, *Data Disc, Inc., supra; Gelfand v. Tanner Motor Tours, Ltd.*, 339 F.2d 317, 323 (2d Cir. 1964), it seems more expeditious, where possible, to resolve such issues at the outset on the basis of written submissions in favor of the party resisting the motion. While such a threshold showing is sufficient to allow the suit to continue, the parties are not bound by the Court's jurisdictional findings in the subsequent proceedings, and the party as-

*Marketing Showcase, Inc. v. Alberto-Culver Co.,* 445 F.Supp. 755, 760 (S.D.N.Y.1978); *Top Form Mills, Inc. v. Sociedad Nationale Industria Applicazioni Viscosa,* 428 F.Supp. 1237, 1241 (S.D.N.Y.1977); *Ghazoul v. International Management Services, Inc., supra,* 398 F.Supp. at 309.

Accepting, therefore, plaintiff's assertions as true, the question is whether they establish a basis for personal jurisdiction under New York law. The facts set forth in plaintiff's affidavit suggest two possible bases. First, they indicate that defendant may be "transacting business" in New York so as to establish a basis for jurisdiction under New York's "long-arm" statute, N.Y. C.P.L.R. § 302. Secondly, they suggest that defendant—although not an authorized foreign corporation—may be "doing business" in New York to such an extent that it should be deemed "present" in the state and therefore susceptible to its jurisdiction under N.Y.C.P.L.R. § 301.

### A. *"Transacting Business"*

 New York's long-arm statute, N.Y.C.P.L.R. § 302, subjects to the state's judicial jurisdiction a non-domiciliary who "in person or through an agent . . . transacts any business within the state" provided the cause of action in question is one "arising from" the business transacted. § 302(a)(1). It seems clear that the cause of action for commissions at issue here arose from business transacted in New York. However, this business was transacted by *plaintiff* rather than defendant. The question, therefore, is whether plaintiff here can be deemed an "agent" for defendant so as to bring defendant within the statute.

The answer under New York law appears to be a resounding no. First, it seems that plaintiff is not an "agent" in the strictest sense of the word, but rather an "independent contractor."[5] The New York Court of Appeals has indicated that the acts of an independent contractor in New York cannot be attributed to his non-domiciliary principal under § 302(a)(1). *Glassman v. Hyder,* 23 N.Y.2d 354, 362, 296 N.Y.S.2d 783, 789, 244 N.E.2d 259, 263 (1968); McLaughlin, Practice Commentary, 7B C.P.L.R. § 302, at 65–68 (McKinney 1972); *cf. Galgay v. Bulletin Company, Inc.,* 504 F.2d 1062, 1064–65 (2d Cir. 1974) (formal agency relationship not needed to impute activity against defendant sued by a third party). However, even if plaintiff could be styled a true "agent" within the meaning of section 302, it would avail it nothing. When a New York agent sues a non-domiciliary principal seeking to be paid for services rendered in New York, the agent's in-state activities will not be imputed to the non-domiciliary even if a proper agency relationship is involved. *Haar v. Armendaris Corp.,* 40 A.D.2d 769, 337 N.Y.S.2d 285, *rev'd,* 31 N.Y.2d 1040, 342 N.Y.S.2d 70, 294 N.E.2d 855 (1973) (Court of Appeals approved dissenting opinion below); McLaughlin, Supplementary Practice Commentaries, 7B C.P. L.R. § 302, at 21 & 25–26 (McKinney Supp. 1977–78). Therefore, plaintiff cannot, by virtue of its own acts in New York, bootstrap jurisdiction by imputing those acts to defendant. *Id.* at 26.

 Plaintiff also cites defendant's shipments of goods into the state and visits to New York by defendant's president as jurisdictionally significant circumstances. Even assuming the somewhat doubtful

---

serting jurisdiction must still prove the facts on which it is based by a preponderance of the evidence. *Marketing Showcase, Inc. v. Alberto-Culver Co.,* 445 F.Supp. 755, 759 (S.D.N.Y. 1978); *Ghazoul v. International Management Services, Inc., supra,* 398 F.Supp. at 309.

**5.** Weinhaus and defendant specifically agreed in their January 1977 contract (clause 17) that Weinhaus would be an "independent contractor." While the parties' beliefs as to the nature of the relationship they are creating is not dispositive, *see* Restatement (Second) Agency

§ 220(2)(i) & Comment m, it is one of several factors to be considered. Of the other factors listed in § 220, those pertinent here also suggest that plaintiff was an "independent contractor." Plaintiff worked on a commission basis. The long distance between defendant and plaintiff suggests that defendant exercised little daily control or supervision over plaintiff's activities. And plaintiff is a separate corporation, having its own business. All these things indicate that plaintiff is an independent contractor.

proposition that plaintiff's claim for commissions "arises from" the shipment of goods into New York, it is clear that the "mere shipment" of goods into New York does not amount to a transaction under section 302. *Kramer v. Vogl,* 17 N.Y.2d 27, 267 N.Y.S.2d 900, 215 N.E.2d 159 (1966). While shipments into the state coupled with in-state solicitation by *defendant* can create a basis for jurisdiction, *Buckley v. Redi-Bolt, Inc.,* 49 Misc.2d 864, 268 N.Y.S.2d 653 (1966), the solicitation here was done by plaintiff. As noted above, an exercise of jurisdiction under section 302(a)(1) turns on the purposeful activities of defendant in New York or the activities of those whose acts are attributable to defendant. *Galgay v. Bulletin Company, Inc., supra,* 504 F.2d at 1065–66; *Marketing Showcase, Inc. v. Alberto-Culver Co., supra,* 445 F.Supp. at 759. Finally, it seems clear that the claim for commissions asserted here cannot be said to arise out of the visits of the president of the defendant corporation to New York as described by Weinhaus in his deposition. It is not asserted that the contract or any subsequent agreement entitling plaintiff to commissions was made in New York. The general discussions between Kaminsky and Weinhaus regarding merchandising techniques did not give rise either directly or indirectly to any legal obligations between the parties.[6]

In sum, the facts alleged by plaintiff in its affidavit provide no basis for personal jurisdiction under N.Y.C.P.L.R. § 302(a)(1).

### B. *"Doing Business"*

■ Where a corporation is found to be "doing business" in New York, it is deemed present within the state and therefore subject to the general jurisdiction of its courts (*i. e.,* susceptible to suit on any cause of action, whether or not it arises from the corporation's activities within the state).

*Tauza v. Susquehanna Coal Co.,* 220 N.Y. 259, 268, 115 N.E. 915, 918 (1917). To be "doing business" in New York, a corporation must be in the state "not occasionally or casually, but with a fair measure of permanence and continuity." *Id.* at 267, 115 N.E. at 917.

■ Here, plaintiff alleges two circumstances to suggest this type of continuing contact. First, plaintiff points to his own acts within the state undertaken in behalf of defendant. It is clear that where a foreign corporation has a subsidiary that acts, in effect, as an agent for it within New York, and where that subsidiary performs acts so essential to the foreign corporation that, if the subsidiary were not to perform them, the foreign corporation would have to come into New York to perform them itself, then that foreign corporation may be deemed present within the state. *Frummer v. Hilton Hotels Int'l, Inc.,* 19 N.Y.2d 533, 281 N.Y.S.2d 41, 227 N.E.2d 851 (1967). However, as noted, it appears that plaintiff acted in the present case as an "independent contractor," and the Court of Appeals of New York has declined to impute the acts of an independent contractor in New York to a non-domiciliary corporation. *Miller v. Surf Properties, Inc.,* 4 N.Y.2d 475, 176 N.Y.S.2d 318, 151 N.E.2d 874 (1958).

It is helpful here to note the facts of *Frummer·* and *Miller* and the manner in which the Court of Appeals distinguished them. In *Frummer,* plaintiff was injured in a London hotel. That hotel was an English corporation owned by a Delaware corporation, Hilton Hotels International, which was, in turn, owned by Hilton Hotels Corporation, another Delaware corporation. These two Delaware corporations jointly owned Hilton Credit Corporation, which did

---

**6.** Casual physical presence in the state will not suffice to establish jurisdiction. 1 J. Weinstein, H. Korn, & A. Miller, New York Civil Practice ¶ 302.08, at 3–93. The relevant variables are the status of the visitor, duration of the visit and significance of his acts. *Id.* at 3–95. While Kaminsky is said by plaintiff to have been president of the defendant corporation at the time of his visits, those visits were only biannual (at most) and made primarily for the purpose of attending a trade show. Plaintiff does not indicate what the duration of these visits was. In any event, incidental discussions with plaintiff regarding the general area of sales would not seem sufficient to support jurisdiction.

business in New York making and confirming hotel reservations (including reservations made at the London hotel) and financing credit cards. Plaintiff was successful in imputing this activity from the New York affiliate to the defendant. By contrast, In *Miller* plaintiff sought unsuccessfully to sue a Florida hotel in New York on the basis of the New York activities of an independent travel agency which arranged for reservations at the Florida hotel. The *Frummer* court distinguished *Miller* on the grounds that the travel agency in *Miller* was an independent economic entity and that the reservations made by the agency in *Miller* were subject to confirmation in Florida. *Frummer v. Hilton Hotels Int'l, Inc., supra,* 19 N.Y.2d at 537, 281 N.Y.S.2d at 44–45, 227 N.E.2d at 854.

██ Here, as in *Miller*, plaintiff is an independent economic entity, and the contract between Weinhaus and defendant shows that defendant retained the right to refuse any orders solicited by Weinhaus. The New York Court of Appeals reaffirmed the importance of these distinctions in *Delagi v. Volkswagenwerk A. G.,* 29 N.Y.2d 426, 431–33, 328 N.Y.S.2d 653, 656–57, 278 N.E.2d 895, 897–98 (1972). There, the Court of Appeals declined to base jurisdiction over the German defendant corporation on the activities of independent franchisees selling its product for their own accounts. From the *Delagi* case, one commentator has concluded that, "if a foreign corporation is to be found doing business here because of the acts of a local corporation, a true agency must be found between the two corporations—an agency marked by the usual trappings of control and fiduciary obligations." McLaughlin, Supplementary Practice Commentary, 7B C.P.L.R. § 301, at 8 (McKinney Supp.1977–78). In finding such an agency, common ownership appears to be vital, *Delagi v. Volkswagenwerk A. G., supra,* 29 N.Y.2d at 431, 328 N.Y.S.2d at 656, 278 N.E.2d at 897, and the ability to make binding contracts is also important, *Fordyce v.*

*Round Hill Developments, Ltd.,* 585 F.2d 30, (2d Cir. 1978). Therefore, plaintiff's New York activities, undertaken as an independent contractor in behalf of defendant, appear not to constitute "doing business" in New York under prevailing tests.

It is also worth noting that *Miller, Frummer* and *Delagi* all involved suits by third parties. They were not actions in which a representative, as plaintiff, asserts his own in-state activities as a basis for jurisdiction in a suit against his non-domiciliary principal. As noted above, when an agent sues his principal for acts done on his behalf in New York, those New York activities cannot be imputed to the principal for the purpose of determining whether the defendant principal was "transacting business" in the state under N.Y.C.P.L.R. § 302(a)(1). Therefore, even assuming that plaintiff here was a proper "agent," it seems highly unlikely that the Court of Appeals would impute the acts of a plaintiff/agent to a defendant/principal for the purposes of section 301 jurisdiction while declining to do the same for section 302 jurisdiction. McLaughlin, Supplementary Practice Commentary, 7B C.P.L.R. § 302, at 21 (McKinney Supp.1977–78).[7]

██ The second, more persuasive, circumstance suggesting that defendant is doing business in New York is that, according to plaintiff, defendant has maintained, at various times, two offices in New York City. It is established that the maintenance of even a relatively minor office in New York may provide an adequate basis for jurisdiction. *Bryant v. Finnish Nat'l Airline,* 15 N.Y.2d 426, 260 N.Y.S.2d 625, 208 N.E.2d 439 (1965). In *Bryant,* a plaintiff injured in France on a Finnish airline sued the airline in New York, where the airline maintained a one-and-a-half-room office staffed by three full-time and four part-time workers engaged primarily in the receipt and forwarding of reservations for travel on the airline in Europe (the airline had no flights in the United States). All

---

7. *See Del Bello v. Japanese Steak House, Inc.,* 43 A.D.2d 455, 352 N.Y.S.2d 537 (4th Dep't 1974). *Contra, Traub v. Robertson-American Corp.,* 82 Misc.2d 222, 368 N.Y.S.2d 958 (Sup. Ct.1975).

contracts made at the New York office were subject to approval in Finland; no tickets were sold by the office (however, they were available in the office from a separate travel agency); and the airline maintained a small bank account in New York to pay office expenses.' On these facts, the New York Court of Appeals found jurisdiction.

 Although Weinhaus, in his affidavit, asserts the existence, at various times, of two offices maintained by defendant in New York, he provides few details regarding their operations. All that is revealed is that the Fifth Avenue office "was maintained by the cousin of the president of the defendant corporation," and that, on June 23, 1978, a check was made out by a New York corporation, evidently a customer of the defendant, payable to "H. R. Kaminsky, 350 5th Avenue, New York," in the amount of $22,224.31. No information is given about the number of employees in these offices, the type of business conducted by them, the volume of that business, the length of time during which these offices were open, or any other details. In short, the information provided regarding these offices is so sketchy that it is impossible to determine whether the activities conducted through them are sufficient to support jurisdiction.

### Conclusion

Since *Bryant* makes it clear that New York demands only a very small scale of local operations when a corporation maintains an office within the state, and since plaintiff alleges two offices, at least one employee, and suggests some activity in receiving payments for goods sold, outright dismissal of plaintiff's complaint seems undesirable. However, more information is clearly needed before this Court can find that plaintiff has made even a prima facie showing of jurisdiction. To obtain such information, it is within the discretion of this Court to permit discovery to aid in determining whether it has jurisdiction. *H. L. Moore Drug Exch., Inc. v. Smith, Kline & French Lab.*, 384 F.2d 97 (2d Cir. 1967); 5

Wright & Miller § 1351, at 566. Accordingly, the best course of action appears to be to adjourn the instant motion pending discovery proceedings to clarify whether defendant has or, at the relevant time, had any offices in New York and, if so, the nature and extent of its activities. *See Goldstein v. Compudyne Corp.*, 262 F.Supp. 524 (S.D.N.Y.1966). Therefore, for the foregoing reasons the motion to dismiss is denied at this time, with leave to renew should the jurisdictional facts that develop warrant such action.

So ordered.