**LORIA & WEINHAUS, INC., Plaintiff,**

v.

**H. R. KAMINSKY & SONS, INC., Defendant.**

**No. 78 Civ. 1533 (CHT).**

United States District Court,
S. D. New York.

Aug. 18, 1980.

David Van Muraskin, New York City, for plaintiff.

James A. Math, Mineola, N. Y., for defendant.

## OPINION

TENNEY, District Judge.

Defendant H. R. Kaminsky & Sons, Inc. ("Kaminsky") renews its motion to dismiss the complaint of plaintiff Loria & Weinhaus, Inc. on the ground that the defendant is not "doing business" in New York and cannot be subject to jurisdiction here. In a prior Opinion, 80 F.R.D. 494 (S.D.N.Y.1978), the Court described the facts of this case and the relevant jurisdictional principles.[1] That discussion will not be repeated here. The Court concluded that additional information was needed to resolve defendant's jurisdictional claim and suggested that additional discovery be conducted "to clarify

---

1. The Court rejected the plaintiff's argument that the defendant was subject to jurisdiction pursuant to New York's long-arm statute, N.Y. C.P.L.R. § 302(a)(1).

whether defendant has or, at the relevant time, had any offices in New York and, if so, the nature and extent of its activities." *Id.* at 501. The parties have now submitted the fruits of their labor and reopened the jurisdictional inquiry. On the basis of the evidence presented, the Court concludes that Kaminsky was not "doing business" in New York during the time the cause of action arose and is not subject to jurisdiction in the state.

*Background*

Plaintiff, a New York corporation, instituted this action to recover commissions allegedly owed by the defendant, a Georgia corporation, for the sale of defendant's product. In January 1977, the parties entered into a contract under which plaintiff became the exclusive national representative for the sale and distribution of defendant's goods in return for a 5% commission. In opposing Kaminsky's original motion to dismiss, Robert Weinhaus, president of the plaintiff corporation, stated that during his association with Kaminsky the defendant had maintained an office and showroom in New York City at 10 West 33rd Street and had previously maintained an office at 350 Fifth Avenue. Weinhaus described his activities on behalf of the defendant and stated that Larry Kaminsky, an officer of the defendant corporation, had made periodic visits to New York trade shows. *See id.* at 497.

Additional information regarding the defendant's New York contacts were adduced at the examination before trial of Larry Kaminsky who, as executive vice president, "generally run[s] the company." Deposition of Larry E. Kaminsky, sworn to January 1, 1980 ("Kaminsky Dep.") at 4. During the years 1972 to 1975, Norman Leincran, Kaminsky's cousin, occupied an office at 350 Fifth Avenue and served as a sales representative for the defendant. Leincran received "a draw against commissions," *id.* at 11, although "there were years when [he] did not make his full draw in terms of earning commissions which were written off by the company" because he was a relative. *Id.* at 17. Defendant had no writ-

ten agreement with Leincran and did not reimburse him for the rent or furniture for the office. *Id.* at 16–17. The defendant's name and its trade name, Tads, were on the office door. The defendant did not have a bank account in New York City, nor did Leincran have an account on behalf of the company. *Id.* at 28–29. When Leincran took an order for the defendant's goods, he phoned or mailed it to the company's office in Fitzgerald, Georgia. All orders had to be approved by the Georgia office before they could be written up and shipped out; this was explicitly stated on the company's order blanks. *Id.* at 29–30. Kaminsky did not go over Leincran's office books and records. *Id.* at 9–10. He did not know of any other people who worked for Leincran in selling defendant's products although Leincran "might have had people that he dealt with on other items that he was selling." *Id.* at 10. Leincran sold the defendant's products both in New York City and other areas. *Id.* at 22–23.

Some time around 1974 to 1976, Barbara Raskin transacted some sales for the defendant. She had an office in New York City and sold about $100,000.00 worth of defendant's goods. Although Kaminsky was uncertain, it appears that many of her accounts were outside New York. There was no formal agreement with Raskin and she no longer calls defendant's office about orders. *Id.* at 32–35.

The defendant's products are currently being sold by Fred Storch, under the corporate name BJS, who has an office at 350 Fifth Avenue. Storch has an "oral understanding" with the defendant and he does not transact sales on a regular basis. *Id.* at 37, 43. Kaminsky has not been in New York City when sales are made and Storch contacts the Georgia office about the orders. Kaminsky stated that he had visited the office at 350 Fifth Avenue while in New York for trade shows. The office door does not bear the defendant's name or Tads logo. *Id.* at 38.

Kaminsky was questioned about two items relied upon by the plaintiffs to sup-

port their allegation that the defendant is "doing business" in New York. The first is a check from Hartfield-Zodys, Inc. ("Hartfield-Zodys"), 441 Ninth Avenue, New York City, in the amount of $22,224.31 made out to H. R. Kaminsky, 350 Fifth Avenue, New York. The check is dated June 23, 1978. Exhibit C to Affidavit of Larry E. Kaminsky, sworn to January 3, 1980 ("Kaminsky Aff."). Kaminsky stated that the defendant did not maintain an office at 350 Fifth Avenue either on or prior to June 23, 1978. Kaminsky Dep. at 19. When checks were made out to H. R. Kaminsky & Sons, they are normally mailed to the corporate office in Fitzgerald, Georgia. *Id.* at 19–20. Kaminsky stated that he had no records then available indicating to what office Hartfield-Zodys usually sent its checks. Subsequently, in an affidavit submitted to the Court, Kaminsky asserted that "Hartfield-Zodys had been doing business with the defendant for approximately 20 years prior to this check and had apparently used an old address which they had used when dealing with Norman Leincram on sales questions for the payment of this amount due." Kaminsky Aff. ¶ 14. A new check was later issued by Hartfield-Zodys and sent to the defendant's Georgia office. *Id.*

The second item shown to Kaminsky was a letter dated December 14, 1977 and addressed to Robert Weinhaus, New York office, 10 West 33rd Street. The stationery indicates that the defendant has a New York showroom at 350 Fifth Avenue. When questioned about this matter, Kaminsky replied:

> A This was at the time that Norman Leincran sold for us here in New York and he asked us to show the showroom at 350 so anyone would know that they can buy our goods from him in New York.
> Q Is that letter dated after Norman Leincran—
> A The letter is dated after Norman wasn't with us any longer.
> Q Can you explain to us why the address remained on the stationery?
> A Right. We had printed up tons of stationery and I didn't want to spend the

money to do new stationery. Occasionally we inked it out, but it looked bad. Kaminsky Dep. at 45–46.

*Discussion*

■ A foreign corporation found to be "doing business" in New York is subject to jurisdiction in the state on any cause of action whether or not it arises from the corporation's in-state activities. *Tauza v. Susquehanna Coal Co.,* 220 N.Y. 259, 268, 115 N.E. 915, 918 (1917). Jurisdiction may be asserted only if the corporation is present in the state "not occasionally or casually, but with a fair measure of permanence and continuity. *Id.* at 267, 115 N.E. at 917.

■ In its prior Opinion, the Court rejected the plaintiff's arguments that its own in-state activities on behalf of the defendant satisfied the "doing business" standard. 80 F.R.D. at 500. Not only was the plaintiff found to be an independent contractor and not a "true agent," but it was seeking to impute its own acts to its alleged principal to establish jurisdiction. Under New York's "doing business" test, "[t]he independent acts in New York for their own purposes by residents in a contract relationship with a non-resident person or corporation in another State may not be attributed to the non-resident so as to become the acts of the non-resident within New York." *DelBello v. Japanese Steak House, Inc.,* 43 A.D.2d 455, 462, 352 N.Y. S.2d 537, 540 (4th Dep't 1974). *See Pneuma-Flo Systems, Inc. v. Universal Machinery Corp.,* 454 F.Supp. 858, 862–64 (S.D.N.Y.1978).

The plaintiff's second argument is that the "doing business" standard is satisfied by the defendant's association with Leincran, Raskin and Storch; the existence of the 350 Fifth Avenue office and its listing on the defendant's stationery; the shipment of orders to New York and the placement of orders from the state; and the Hartfield-Zodys check made out to the defendant in New York. The Court disagrees.

■ The plaintiff's heavy reliance on the defendant's arrangements with Lein-

cran, Raskin, and Storch is misplaced. All appear to have been an independent agent like the plaintiff—they worked on commission, paid their own expenses, could not finalize orders, and were not subject to the defendant's direct control. Their activities, therefore, cannot constitute a basis for jurisdiction. *See Delagi v. Volkswagenwerk A. G.*, 29 N.Y.2d 426, 431–33, 328 N.Y.S.2d 653, 656–57, 278 N.E.2d 895, 897–98 (1972); *Miller v. Surf Properties, Inc.*, 4 N.Y.2d 475, 176 N.Y.S.2d 318, 151 N.E.2d 874 (1958); *Sheldon Estates, Inc. v. Perkins Pancake House, Inc.*, 48 A.D.2d 936, 369 N.Y.S.2d 806 (2d Dep't 1975). Furthermore, the parties agree that the defendant's business association with Leincran ended around 1975; jurisdiction should not be based on arrangements no longer in existence at the time the cause of action arose.

■ The New York address listed on the defendant's stationery does not establish that the company actually had an office in the state. Kaminsky's explanation regarding the use of the stationery appears credible. The plaintiff presents no evidence that the defendant is named on the lease, pays rent, or has used and is using the space for its own purposes. *Bryant v. Finnish Nat'l Airline*, 15 N.Y.2d 426, 260 N.Y.S.2d 625, 208 N.E.2d 439 (1965), in which jurisdiction was based on a small, New York City airline reservation office staffed by full and part-time employees and supported by a New York bank account, is thus inapposite.

■ The mere shipment of goods into New York does not constitute "doing business." *Cf. McKee Elec. Co. v. Rauland-Borg Corp.*, 20 N.Y.2d 377, 283 N.Y.S.2d 34, 229 N.E.2d 604 (1967) (shipment of goods does not satisfy lower "transacting business" standard); *Kramer v. Vogl*, 17 N.Y.2d 27, 267 N.Y.S.2d 900, 215 N.E.2d 159 (1966) (same). Nor does the placement of orders in New York establish a basis for jurisdiction; all orders were subject to final approval by the defendant's corporate headquarters in Georgia. *See Fordyce v. Round Hill Devs., Ltd.*, 585 F.2d 30 (2d Cir. 1978); *Meyer v. Gas Magazines, Inc.*, 49 A.D.2d 864, 374 N.Y.S.2d 322 (1st Dep't 1975). Occasional visits by Kaminsky to New York trade shows or to his local sales representatives are not sufficient contacts to support jurisdiction. *See Concrete Detailing Servs., Inc. v. Thomsson Steel Co.*, 411 F.Supp. 1021 (S.D.N.Y.1976) (visits by corporate officer held not to satisfy lower "transacting business" standard); *Meyer v. Gas Magazines, Inc., supra.*

■ Finally, while the Hartfield-Zodys check does evidence an in-state business transaction, the plaintiff has failed to establish any pattern of New York payments or particular corporate deals revolving around the Fifth Avenue address. The plaintiff has the burden of proving that the defendant was "doing business" in New York, *Pneuma-Flo Systems, Inc. v. Universal Machinery Corp., supra*, 454 F.Supp. at 862, and one check made out to a New York address does not satisfy that burden.

*Conclusion*

After having an opportunity for additional discovery, the plaintiff has failed to establish that the defendant's course of conduct within New York State rose to a level of "doing business." Defendant's New York sales people were independent representatives, the company did not maintain an office here, and its other contacts were too minimal to confer jurisdiction. Accordingly, the defendant's motion to dismiss is granted.

So ordered.