**NEW YORK MARINE MANAGERS, INC. as subrogee of D.B. Orban (Canada), Inc., Plaintiff,**

v.

**M.V. "TOPOR–1," her engines, boilers, etc.,**

v.

**EKTRANS INTERNATIONAL TRANSPORT & TRADE, INC. and Topor Shipping Co., S.A., Defendants.**

No. 88 Civ. 3682 (MBM).

United States District Court, S.D. New York.

July 10, 1989.

Vincent J. Barra (Carl Ian Schwartz and James E. Ryan, of counsel), Dougherty, Ryan, Mahoney, Pellegrino, Giuffra & Zambito, New York City, for plaintiff.

Melih Dogan (James M. Morrissey, of counsel), Dogan & Morrissey, New York City, for defendant Ektrans Intern. Transport & Trade, Inc.

## OPINION AND ORDER

MUKASEY, District Judge.

Defendant Ektrans International Transport & Trade, Inc. moves to dismiss the charter-party claim of plaintiff New York Marine Managers, Inc., as subrogee of D.B. Orban (Canada), Inc., for lack of personal jurisdiction, improper venue, and *forum non conveniens.* Fed.R.Civ.P. 12(b)(2), (3). Pursuant to a prior Opinion and Order, familiarity with which is assumed, I held an evidentiary hearing on these issues after which written submissions were accepted. *New York Marine Managers, Inc., v. M.V. "TOPOR–1"*, 88 Civ. 3682 (MBM), 1989 WL 4030 (S.D.N.Y. Jan. 17, 1989). For the reasons discussed below, Ektrans' motion is denied.

Ektrans, a Turkish corporation, is part of a group of closely held corporations owned and controlled by the family of the late Ali Ekinci. The family includes Ekinci's wife Adeviye, his children Faruk, Haluk, Tarik, Namik, and Orhan, and his nephew Mustafa Ekinci. Tr. at 114–115.[1] Through Mustafa, Adeviye owns 92% of Ektrans. Tr. at 114; PX G. With the ownership interests of Faruk, Haluk, Tarik, and Namik added in, the Ekinci family owns 95.8% of the firm. PX G.

The Ekinci family also controls between 65% and 75% of Ekinciler Holdings, S.A., a Turkish corporation. Tr. at 115–16. Orhan is the president of Ekinciler Holdings, and Mustafa is its vice president, and both are directors. Tr. at 43, 113. Ekinciler Holdings owns 87% of the shares of Ekinciler Iron & Steel, also a Turkish corporation. Tr. at 117–18; PX 12. Various family members own another 10.9% of Iron & Steel, giving the Ekinci family effective control over 97.9% of the manufacturer. PX 12. Ekinciler Holdings also owns 12.1% of Ekinciler Dis Ticaret, a Turkish corporation; Iron & Steel owns 59.4% of the firm;

---

1. "Tr." refers to the transcript of the evidentiary hearing. "PX" refers to the a plaintiff's exhibit at the hearing.

and various family members own an additional 14.9%. PX 13. Therefore, the Ekinciler family, directly or indirectly controls over 86.4% of the shares of Dis Ticaret.

Dis Ticaret wholly owns Ekco International Trading Corporation, a New York corporation with a place of business in the Empire State Building. Tr. at 48–49, *see* Tr. at 90–91. Orhan was president of Ekco from January 1984 until August 1988, when his brother Faruk succeeded him. Tr. at 105–07; PX 10. All of Ekco's credit facilities are secured by Dis Ticaret, *see* Tr. at 120–21, and with the exception of cash in its New York accounts, Ekco has no assets. Tr. at 123.

Dis Ticaret also owns 90% of Ektrade America, Inc., a Delaware corporation with offices in United Nations Plaza in New York City. Tr. at 88–91. Faruk is Ektrade's only employee, and in addition owns the remaining 10% of the firm. Tr. at 91, 119.

 Although no admiralty rule governs which of these corporations is subject to the jurisdiction of a federal admiralty court sitting in New York, admiralty practice is substantially similar to that existing under Fed.R.Civ.P. 4. *Societe Commerciale de Transports Transatlantiques (S.C.T.T.) v. S.S. "African Mercury"*, 366 F.Supp. 1347, 1349 (S.D.N.Y.1973). Under Fed.R.Civ.P. 4(e), the jurisdictional statutes of the forum state govern who may be haled into a federal court sitting in that state. Therefore, a foreign corporation doing business in New York may be sued in the state on any claim, even those that do not arise from activities within the state. N.Y.C.P.L.R. 301 (McKinney 1972); *e.g. ABKCO Indus. v. Lennon*, 52 A.D.2d 435, 439–40, 384 N.Y. S.2d 781, 783–84 (1st Dep't 1976); 1 J. Weinstein, H. Korn & A. Miller, *New York Civ. Prac.* ¶ 301.10 at 3–22 –23 (rev. ed. 1989).

 The question of jurisdiction should be dealt with simply and pragmatically, and should take into account the quality of a firm's contacts with the forum state, not the quantity of those contacts. *Beja v. Jahangiri*, 453 F.2d 959, 961 (2d Cir.1972); *Bryant v. Finnish Nat'l Air-*

*line,* 15 N.Y.2d 426, 432, 208 N.E.2d 439, 441, 260 N.Y.S.2d 625, 629 (1965). More specifically, the contacts must show continuous, permanent, and substantial activity in the state, either by the corporation itself, or by its agents. *E.g., Grill v. Walt Disney Co.*, 683 F.Supp. 66, 68–9 (S.D.N.Y. 1988) (collecting cases). For jurisdictional purposes, a formal agency relationship is not necessary in order to find that a domestic company is acting as a foreign corporation's agent. *Teachers Ins. & Annuity Ass'n of Am. v. Butler*, 592 F.Supp. 1097, 1101 (S.D.N.Y.1984) (Weinfeld, J.).

 If Ektrans were found to maintain an office in New York, that would indicate that Ektrans has a stable and permanent presence in the state, even if little or no business is actually transacted within the state. *See Finnish Nat'l Airline*, 15 N.Y.2d at 432, 208 N.E.2d at 441, 260 N.Y. S.2d at 629. In a promotional brochure, Ektrans proclaims that it has an overseas branch in New York City, and provides its exact address, telex number and telephone numbers. PX 2. Although the brochure was distributed by Ektrade and not Ektrans, the evidence establishes that both companies were under common control and ownership to a sufficient degree that, for jurisdictional analysis, Ektrade's dissemination of the brochure is chargeable to Ektrans. In addition, a 1986 cable from Ektrans to a customer indicates that the firm was using its "New York branch" to help collect past due debts. PX 6.

 Feyyaz Gozacan, the general counsel for Ektrans, initially testified that Ektrans had no offices in New York, tr. at 8, and then indicated that Ektrans' New York address was an office of Ekco. Tr. at 49. Gozacan's initial testimony has been used by Ektrans to argue that it is not doing business in New York. If what Gozacan meant to convey was that the New York office belonged to Ekco and not Ektrans, then that testimony misses the central point, *i.e.,* that Ektrans was holding itself out to the world as having a New York office. Even if Gozacan's testimony is literally true, and the New York office

belonged to Ekco, the fact that Ektrans, a related company under common control, listed Ekco's office as its own is strong evidence—for purposes of determining jurisdiction—that Ektrans used Ekco as its New York agent. *See Gelfand v. Tanner Motor Tours, Ltd.*, 385 F.2d 116 (2d Cir. 1967) (personal jurisdiction), *cert. denied*, 390 U.S. 996, 88 S.Ct. 1198, 20 L.Ed.2d 95 (1968); *Frummer v. Hilton Hotels Int'l, Inc.*, 19 N.Y.2d 533, 227 N.E.2d 851, 281 N.Y.S.2d 41 (same), *cert. denied*, 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266 (1967); *Delagi v. Volkswagenwerk AG*, 29 N.Y.2d 426, 278 N.E.2d 895, 328 N.Y.S.2d 653 (1972) (same). Finally, if Gozacan's testimony were read to deny the existence of any Ektrans presence in New York, then it would be incredible. These same conclusions apply to the earlier attorney affidavit averring that Ektrans has no office in New York.

In addition to maintaining an office in New York, Ektrans also uses Ekco as an American collection and disbursement office. Ekco bank records reveal that the firm collects at least some of Ektrans' accounts receivable, and pays at least some of Ektrans' bills, including the lawyers' fees connected with this action. Tr. at 55–59, 68; PX 6, 7, 14. Moreover, these records indicate that Ekco performs these transactions solely for Ektrans' benefit, with no apparent benefit to Ekco. Therefore, as a practical matter, Ekco is doing what Ektrans would have to do for itself if Ekco were not present in the United States. *Tanner Motor Tours, Ltd.*, 385 F.2d at 120–21; *Hilton Hotels Int'l, Inc.*, 19 N.Y.2d at 537–38, 227 N.E.2d at 853–54, 281 N.Y.S.2d at 44–45. That conclusion is reinforced by Gozacan's testimony that under Turkish law, it was illegal for Ektrans to do business in New York. Tr. at 9. A reasonable inference from this testimony is that Ektrans had no choice but to use Ekco or another surrogate if it wanted to do business in New York, which, from the record in the case, it appears that Ektrans did. Therefore, the facts and circumstances in this case indicate that personal jurisdiction is proper over Ektrans as a firm doing business in New York. Moreover,

because Ektrans does business in the state, a federal court sitting in admiralty may exercise personal jurisdiction over Ektrans without offending due process. *International Shoe v. Washington*, 326 U.S. 310, 316–19, 66 S.Ct. 154, 158–60, 90 L.Ed. 95 (1945).

Ektrans also asserts that it has not been served properly. However, plaintiff served Ekco, which uncontestedly is amenable to service in New York. Because Ekco is Ektrans' agent in New York, service on Ekco constituted proper service on Ektrans. *See Taca Int'l Airlines, S.A. v. Rolls Royce of England, Ltd.*, 15 N.Y.2d 97, 102, 204 N.E.2d 329, 331, 256 N.Y.S.2d 129, 132 (1965); *Rabinowitz v. Kaiser-Frazer Corp.*, 302 N.Y. 892, 893, 100 N.E.2d 177, 178 (1951) (mem op.); N.Y.C.P. L.R. 311 (McKinney 1972 & Supp.1989); *see Canterbury Belts Ltd. v. Lane Walker Rudkin Ltd.*, 869 F.2d 34, 40 (2d Cir.1989). Therefore, because service was accomplished in the United States, contrary to Ektrans' contention, there is no need for Ektrans to be served in accordance with the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 16, 1965, [1969] 20 U.S.T. 361, T.I.A.S. No. 6638. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, —— U.S. ——, 108 S.Ct. 2104, 100 L.Ed.2d 722 (1988).

Turning to the motion to dismiss for lack of venue, the prior Opinion and Order made clear that Ektrans has the burden of proving that venue was improper in the Southern District of New York. *M.V. "TOPOR-1"*, slip op. at 3. Specifically, Ektrans must show that New York Marine Managers or its subrogor Orban had actual notice of the charter party that governed the voyage on which the subject goods travelled, or that through a course of dealing, the term "FREIGHT PREPAID" on the bill of lading was understood to incorporate a specific and identifiable charter party. *Id.* at 12. Ektrans has not adduced any evidence on these issues. Therefore, its motion to dismiss for lack of venue is denied. Ektrans' motion for a *forum non conveniens* dis-

missal is equally unsupported; therefore that motion is denied as well.

■ Although its request is not so styled, Ektrans moves for reconsideration of a prior ruling that an arbitration clause was not incorporated by reference into the bills of lading Ektrans issued to Orban. S.D.N.Y.Civ.R. 3(j). In addition to being untimely, the motion also is without merit. Unlike the present case, in *State Trading Corp. of India, Ltd. v. Grunstad Shipping Corp.*, 582 F.Supp. 1523 (S.D.N.Y.1984) (Weinfeld, J.), or *Midland Tar Distillers, Inc., v. M/T LOTOS*, 362 F.Supp. 1311 (S.D.N.Y.1973), the party seeking to avoid arbitration had signed the charter party containing the arbitration clause, and thus had actual notice of the clause's inclusion in any bills of lading. Therefore, the authority cited by Ektrans does not change the result or reasoning of the prior Opinion and Order. Because there is no evidence that New York Marine Managers or Orban had actual or constructive notice of a governing charter party, the charter party's arbitration clause will not bind them.

SO ORDERED.