951 F.2d 1357
 1992 A.M.C. 891, 21 Fed.R.Serv.3d 685
 DAVAL STEEL PRODUCTS, A DIVISION OF FRANCOSTEEL CORPORATION;
New York Marine Managers, Inc., as subrogated
underwriters; D.B. Orban Canada Inc.;
and Metal Processing, Inc.,
Plaintiffs-Appellees,
v.
M/V FAKREDINE (Ex Diana, Ex Lila, Ex Minola), her engines,
boilers, etc.; National Shipping Co.; Ektrans
International Transport & Trade, Inc.; Ekco International
Trade Corp.; Erbosan Erciyas Boru Sanayi Ve Ticaret, A.S.;
Transaymar Shipping & Trade, S.A.; Irmania Trading &
Shipping, Inc.; Zihni Shipping & Trading, S.A.; and
Ekinciler Dis Ticaret, A.S., Defendants,
Ekco International Trade Corp. and Ekinciler Dis Ticaret,
A.S., Defendants-Appellants.
 Nos. 414, 415, Dockets 91-7705, 91-7707.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 20, 1991.
Decided Dec. 3, 1991.
 
 David B. Wolf, New York City (Aydin S. Caginalp, Howard Bender, Walter Conston Alexander & Green, P.C., of counsel), for defendant-appellant Ekco Intern. Trade Corp.
 James F. Sweeney, New York City (Donovan Parry Walsh & Repetto, of counsel), for plaintiff-appellee Daval Steel Products.
 James E. Ryan, New York City (Vincent J. Barra, Dougherty, Ryan, Guiffra, Zambito & Barra, of counsel), for plaintiffs-appellees New York Marine Managers, Inc., D.B. Orban Canada Inc., and Metal Processing, Inc.
 Mel Dogan, New York City (Dogan & Morrissey, of counsel), for defendant-appellant Ekinciler Dis Ticaret, A.S.
 Before VAN GRAAFEILAND, MESKILL and MAHONEY, Circuit Judges.
 MAHONEY, Circuit Judge:
 
 
 1
 Defendants-appellants Ekco International Trade Corp. ("Ekco") and Ekinciler Dis Ticaret, A.S. ("Ekinciler") appeal from (1) an order of the United States District Court for the Southern District of New York, Richard Owen, Judge, entered July 18, 1991 that prohibited them from presenting evidence on the issue of "alter ego" liability, and deemed that issue to be established in accordance with the plaintiffs-appellees' claims, pursuant to Fed.R.Civ.P. 37(b)(2)(A) and (B); and from (2) judgments entered July 18, 1991 against Ekco and Ekinciler pursuant to that order.
 
 
 2
 Because there was outstanding against Ekco, but not against Ekinciler, an "order" within the meaning of Fed.R.Civ.P. 37(b)(2) that could be the subject of sanctions thereunder, we affirm as to Ekco, but reverse and remand as to Ekinciler.
 
 Background
 
 3
 A. Facts.
 
 
 4
 The events of this case began in 1986, when plaintiffs-appellees Daval Steel Products ("Daval"), D.B. Orban Canada Inc. ("Orban"), and Metal Processing, Inc. ("Metal Processing") bought steel in Turkey. The steel purchase was arranged and conducted through the Ekinciler group of companies, a group of Turkish corporations almost wholly owned, and controlled, by members of the family of the late Ali Ekinci of Turkey. See New York Marine Managers, Inc. v. M.V. "TOPOR-1", 716 F.Supp. 783, 784-85 (S.D.N.Y.1989).
 
 
 5
 Ekinciler Holdings, A.S. ("Holdings") is a Turkish corporation whose various subsidiary and affiliated entities engage in steel manufacturing, paper production, commodities trading, and international transportation, marketing, finance, and insurance. Holdings is largely owned, and is controlled by, the Ekinci family.
 
 
 6
 There are three principal corporations involved in this action. Ekinciler is a Turkish corporation that produces steel; it is almost wholly owned by Holdings, a Holdings subsidiary, and members of the Ekinci family. Ektrans International Transport and Trade, Inc. ("Ektrans"), also a Turkish corporation, provides ocean transportation to Ekinciler, and is almost wholly owned by members of the Ekinci family. Ekco is a New York corporation that is wholly owned by Ekinciler.
 
 
 7
 The 1986 steel transactions involved separate purchases by Daval, and by Orban and Metal Processing (the "Orban purchase"). The Orban purchase was made directly from Ekinciler, while the Daval purchase was made from an independent manufacturer. Delivery of both purchases, however, was arranged by Ektrans, the voyage charterer employed by Ekinciler, and provided for the steel to be shipped aboard the vessel known as "M/V Fakredine" ("Fakredine"). The steel was shipped together to take advantage of various Turkish customs laws. The transactions were financed through a letter of credit drawn in favor of Ekinciler and the payments, including freight charges, were made by plaintiffs-appellees to Ekco, acting as the New York agent for Ekinciler.
 
 
 8
 The vessel and its cargo never arrived in the United States. Rather, the cargo was apparently diverted to Lebanon. Both the money paid for the freight charges ($155,688.31), the cargo, and the vessel "vanished into the sands of this record," as the district court colorfully put the matter in granting summary judgment to plaintiffs-appellees against Ektrans. The district court also found that Ektrans had used the same vessel (then named the "Minola") in a prior transaction where the cargo similarly disappeared.
 
 
 9
 B. Proceedings Below.
 
 
 10
 1. Initial Proceedings.
 
 
 11
 Daval Steel brought suit against Ektrans and Ekco, inter alia, on September 9, 1987 in the United States District Court for the Southern District of New York, seeking $1.1 million in damages for nondelivery of the shipment of steel. The amended complaint presented a claim under the Carriage of Goods at Sea Act ("COGSA"), 46 U.S.C.app. § 1300 (1988) et seq., as well as for negligence and breach of contract, and invoked federal admiralty and maritime jurisdiction.
 
 
 12
 Plaintiff-appellee New York Marine Managers, Inc. ("Marine Managers"), as subrogated underwriters, Orban, and Metal Processing also brought suit against Ektrans, Ekco, and Ekinciler, inter alia, in the United States District Court for the Southern District of Texas, alleging similar claims and seeking $2.8 million in damages, while simultaneously bringing a similar suit in the Southern District of New York. The two New York suits were consolidated before Judge Owen, and the Texas suit was transferred to the Southern District of New York and also so consolidated.
 
 
 13
 The district court denied various motions of Ektrans, Ekco, and Ekinciler to dismiss the complaints for insufficiency of process, lack of jurisdiction, and improper venue. The court then granted summary judgment in favor of plaintiffs-appellees on the issue of liability against Ektrans. The court found that the undisputed facts established a diversion of the cargo that constituted an act of barratry, for which a charterer was not exonerated under COGSA. The court's order and judgment ambiguously stated that "Ekco, Ektrans and Ekinciler are so interrelated as to be alter egos, under common control and ownership such that the acts of one are the acts of all," although granting judgment only against Ektrans. Ekco, Ektrans, and Ekinciler then took an interlocutory appeal to this court pursuant to 28 U.S.C. § 1292(a)(3) (1988). While the appeal was pending, damages were ascertained and the district court entered judgments exceeding $4.5 million on behalf of plaintiffs-appellees against Ektrans.
 
 
 14
 In a summary order dated June 27, 1991, this court affirmed the judgment and order of the district court awarding summary judgment against Ektrans. With respect to the issue of alter ego liability, however, we stated:
 
 
 15
 [W]e are unable to discern what the district court intended when it made a finding that appellants Ektrans, Ekco and Ekinciler were "alter egos." Despite making this finding, the district court proceeded only to enter judgment against Ektrans. Thus, we, as well as Ekco and Ekinciler, are left to speculate as to what the district court intended. We, therefore, remand that aspect of the district court's order for clarification.
 
 
 16
 2. Alter Ego Proceedings.
 
 
 17
 On remand, a motion was brought in the district court to amend the judgment against Ektrans to include Ekco and Ekinciler as alter egos. On June 27, 1991, the plaintiffs-appellees promptly served Ekco with notices of deposition and subpoenas duces tecum returnable on July 9, 1991. The subpoenas required Ekco to produce at deposition documents concerning (1) property in which Ektrans had an interest or was entitled to any proceeds; (2) all transactions by Ekco with other Ekinciler companies; (3) stock ownership, corporate records, dividend distributions, and directors meetings of Ekco; (4) bank records of Ekco for the last four years; and (5) records relating to property owned by Ektrans anywhere in the world.
 
 
 18
 On July 2, 1991, a hearing was held on the motion concerning Ekco's and Ekinciler's alter ego liability. The hearing was prompted by concerns that Ekco, Ekinciler, and Ektrans were attempting to divert assets to avoid execution of the judgment against Ektrans. The district court orally ordered that the court's prior finding of alter ego liability should not be disturbed until a full evidentiary hearing could finally determine the issue. The court then set July 16, 1991 as the date for that hearing. Neither Ekco nor Ekinciler objected at the July 2 hearing to the plaintiffs-appellees' pending notices of deposition and subpoenas duces tecum.
 
 
 19
 On July 2, 1991, plaintiffs-appellees served a deposition subpoena upon one of the banks at which Ekco maintained an account, Banco di Roma. This notice demanded production of documents related to account transactions for Ektrans, Ekco, Ekinciler, and D.B. Turkish Cargo Lines. The return date was July 10, 1991.
 
 
 20
 On July 8, 1991, one day before the return date of the notices of deposition and subpoenas previously served upon Ekco, Ekco served a motion to quash them on the grounds that: (1) the discovery should be postponed until after the July 16 hearing "to avoid needless and repetitive discovery," (2) the subpoenas were overbroad, and (3) counsel for defendant-appellants needed "additional time to review the documentation referred to in the Subpoenas and prepare for the depositions." Upon inquiry, Ekco's counsel stated that Ekco would not go forward with the discovery until the district court ruled on the motion to quash. On July 10, 1991, Ekco moved to quash the deposition subpoena that had been served on Banco di Roma.
 
 
 21
 On July 11, 1991, an accelerated hearing was held on the motions to quash. The district court denied both motions in full. The court noted that discovery of "the relationships of the companies and the overlapping of boards and management and assets" was relevant to the issue of alter ego liability. The court stated further that "[the plaintiffs-appellees have] already got a judgment here that the Court of Appeals has affirmed saying one of the companies is liable, and all they're trying to do is see whether another couple of related companies don't share that liability because of the relationship." Although the events giving rise to liability occurred in past years, the court indicated that discovery of the more recent relationship among the Ekinciler group of companies could be relevant to an appraisal of the earlier situation. The court then set 10:00 a.m. the following morning at the office of Daval's counsel as the time and place for the deposition and document production. When Ekco's counsel attempted to press its resistance to discovery, the court flatly concluded: "10:00 in the morning. You produce an appropriate witness on these subject matters we've discussed here. And that is an order of the Court [emphasis added]."
 
 
 22
 On July 12, 1991, Ekco produced its president, Faruk Ekinci, for deposition. Ekco failed, however, to respond appropriately to the subpoena duces tecum that had been served upon it fifteen days earlier. For example, Ekco failed to produce banking records of its five known bank accounts, as demanded. Documents pertaining to transactions between Ekco and other companies in the Ekinciler group were similarly withheld. Documents relating to a shipment of steel that had been the subject of specific accusations concerning diversion of assets (that prompted the July 2 hearing) were not produced, and Ekinciler's counsel stated that "no attempt" had been made to do so.
 
 
 23
 In addition to its failure to produce requested documents, Ekco's counsel engaged repeatedly at the deposition in behavior designed to thwart the discovery process. For example, Ekco refused to produce notes from which the deponent was testifying concerning the composition of Ekco's board of directors, and also refused, in the alternative, to mark those notes for identification. Ekco removed documents from its corporate records at the deposition, claiming that they were duplicates or, when it was pointed out that some of the removed documents clearly were not duplicates, that they were subject to the attorney-client privilege; refused to produce the removed documents; and refused to mark them for identification. Most significantly, at the conclusion of this obviously unsatisfactory deposition session, the notices for which stated that the deposition would "continu[e] from day to day until completed," Ekco flatly refused to resume the deposition on the next business day.
 
 
 24
 Marine Managers' counsel gave clear notice that Ekco's obstructive conduct would be brought to the attention of the district court, and Ekco's counsel reacted with indifference. Further, Ekco was pointedly warned that sanctions would be sought for its willful obstruction of discovery.
 
 
 25
 In the meanwhile, on July 10, 1991, trial subpoenas directed to Ekco, Ektrans, and Ekinciler were served at Ekco's offices in New York. The subpoenas called for representatives of the three companies to attend the July 16, 1991 hearing and to produce thereat: (1) all bank records for 1986-1988; (2) all corporate records from 1984-1988, including shareholder and director information; (3) all profit and loss statements for 1986-1988; (4) all tax returns for 1986-1988; and (5) documents relating to financial transactions between Ektrans, Ekinciler, and Ekco during 1986-1988.
 
 
 26
 At the hearing on July 16, 1991, plaintiffs-appellees immediately moved for sanctions pursuant to Fed.R.Civ.P. 37(b)(2)(A) and (B). Their counsel advised the court in detail concerning the abortive deposition that had been conducted on July 12, and also that defendants-appellants' counsel had advised, earlier in the morning of July 16, that no documents were being produced at the hearing in response to the July 10 trial subpoenas. The district court heard oral argument on the application for sanctions, and then observed:
 
 
 27
 [Plaintiffs-appellees' counsel] asked for [the documents noticed in the June 27 subpoenas] and he didn't get [them], so the question is whether I should in effect deem that this hearing is at an end because you have failed to produce the appropriate documents and therefore the facts that he wishes to have established by getting the documents that you might have produced is to be deemed established and the hearing is over.
 
 
 28
 The court specifically rejected the contention that Ekco and Ekinciler had proceeded in good faith. The court then recessed for lunch, during which it reviewed in more detail the transcript of the July 12 deposition.
 
 
 29
 Upon returning from recess, the court granted plaintiffs-appellees' motion for sanctions, ruling that pursuant to Fed.R.Civ.P. 37(b)(2)(A) and (B), it was to be deemed established that Ekco, Ektrans, and Ekinciler were alter egos of each other, and that they would be precluded from offering evidence to the contrary. In its subsequent written order memorializing the oral order, the court stated that plaintiffs-appellees could enforce the judgments they had previously obtained (against Ektrans) against Ektrans, Ekco, and Ekinciler. As bases for the imposition of sanctions, the order cited "defendants' wilful disobedience of the order of this court on July 11, 1991 and their clear and patent effort to hamper the plaintiffs' right to legitimate discovery of evidence relevant to the alter ego hearing before this court on July 16, 1991, and their intentional and bad faith disregard of trial subpoenas served in connection with that hearing." New judgments were then entered on behalf of each plaintiff-appellee against Ektrans, Ekco, and Ekinciler.
 
 
 30
 This appeal followed.
 
 Discussion
 
 31
 Ekco contends on appeal that the district court erred in imposing sanctions upon Ekco pursuant to Fed.R.Civ.P. 37(b)(2) in the absence of an order compelling discovery pursuant to Rule 37(a). Ekinciler joins in this argument, but further contends that there was no order outstanding against Ekinciler, pursuant to Rule 37(a) or otherwise, for whose violation Rule 37(b)(2) sanctions might be imposed. As will appear, we accept Ekinciler's contention in this regard, thus mooting Ekinciler's other arguments.
 
 Ekco also contends that:
 
 32
 (1) the district court abused its discretion by imposing rule 37(b)(2) sanctions without prior warning or the existence of "extreme circumstances;"
 
 
 33
 (2) the sanctions were improper because the discovery order was excessively broad and not reasonably related to the "alter ego" issue; and
 
 
 34
 (3) the district court based the sanctions upon an erroneous view of the requirements of "alter ego" liability.
 
 
 35
 A. The Requirement of a Court Order.
 
 
 36
 Fed.R.Civ.P. 37(b)(2) provides in pertinent part:
 
 
 37
 If a party ... fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule [emphasis added] or Rule 35, or if a party fails to obey an order entered under Rule 26(f), the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
 
 
 38
 (A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order; [or]
 
 
 39
 (B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence....
 
 
 40
 Ekco contends that sanctions may be imposed pursuant to Rule 37(b)(2) only for failure to obey a court order issued pursuant to Rule 37(a). We disagree. The language of Rule 37(b)(2) requires a prior order, see Salahuddin v. Harris, 782 F.2d 1127, 1131 (2d Cir.1986), but does not by its terms specifically require an order issued pursuant to Rule 37(a). Consequently, a Rule 37(a) order is merely one of the orders that can trigger sanctions under Rule 37(b)(2). See Fed.R.Civ.P. 37 advisory committee's note (to 1970 amendment re subdivision (b)); McLeod, Alexander, Powel & Apffel, P.C. v. Quarles, 894 F.2d 1482, 1485 (5th Cir.1990); Tamari v. Bache & Co. (Lebanon) S.A.L., 729 F.2d 469, 472-73 (7th Cir.1984); Professional Seminar Consultants, Inc. v. Sino Am. Technology Exch. Council, Inc., 727 F.2d 1470, 1474 (9th Cir.1984). Provided that there is a clearly articulated order of the court requiring specified discovery, the district court has the authority to impose Rule 37(b) sanctions for noncompliance with that order. Jones v. Uris Sales Corp., 373 F.2d 644, 647-48 (2d Cir.1967).
 
 
 41
 In Jones, the district court granted a motion to strike the answer of the defendant for failure to comply with a subpoena. The defendant argued on appeal that there was no basis for sanctions under Rule 37(b)(2) because he had not refused to obey an order "made under Rule 34 to produce any document or other thing for inspection" (as Rule 37(b)(2) then provided). See 373 F.2d at 647. We rejected that argument, ruling that proceedings before the district court during which the judge issued an oral order requiring compliance with the subpoena provided a proper basis for the Rule 37(b)(2) sanction, see id. at 647-48, although noting that "it would have been better practice for plaintiff ... to have made a written motion under Rule 34." Id. at 648.[1]
 
 
 42
 Applying this rule to the present case, it is clear that Ekco failed to comply with a valid order of the court requiring that a deposition be conducted in accordance with the notices of deposition and subpoenas duces tecum that had been served upon Ekco.[2] The July 11, 1991 hearing, brought on by Ekco's motion to quash the notices and subpoenas, produced an explicit order for production preceded by a detailed discussion of the purpose of the deposition. The court could not have been clearer when it stated to Ekco's counsel: "You produce an appropriate witness on these subject matters we've discussed here. And that is an order of the court." The district court correctly found that Ekco failed to comply with this order.
 
 
 43
 The court was therefore well within its authority in prescribing sanctions pursuant to Rule 37(b)(2), especially in view of defendants-appellants' generally obstructive behavior. See Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp., 602 F.2d 1062, 1068 (2d Cir.1979) ("sanctions must be weighed in light of the full record in the case") (citing National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976) (per curiam)).
 
 
 44
 Ekinciler presents a different case. Although the order compelling discovery need not issue pursuant to Rule 37(a), there must be a valid court order in force before sanctions may be imposed pursuant to Rule 37(b)(2). See Salahuddin, 782 F.2d at 1131. The court order resulting from the July 11, 1991 hearing was directed only to Ekco, the only party to which discovery notices had been directed and the movant of the motion to quash those notices that prompted the hearing. There was no prior order directed to Ekinciler. For this reason, the imposition of sanctions was improper as to Ekinciler, and we therefore reverse the award of sanctions as to it.
 
 
 45
 Plaintiffs-appellees press the argument that the trial subpoena served upon Ekinciler is an order of the court, non-compliance with which justifies the imposition of sanctions under Rule 37(b)(2).
 
 
 46
 We reserved this issue in Jones, where we said:
 
 
 47
 Although we are by no means sure we would agree with the proposition that a pleading may not be struck for contumacious failure of a party to comply with a subpoena duces tecum issued pursuant to Rule 45(d), see Sperandeo for and on Behalf of N.L.R.B. v. Milk Drivers and Dairy Employees Local No. 537, 334 F.2d 381, 385 (10 Cir.1964); 5 Moore, Federal Practice p 45.11 (2d ed. 1964), we find it unnecessary to decide this. The proceedings in Judge MacMahon's chambers on October 21 can properly be regarded as including an oral motion and order under Rule 34 for the production of the papers designated in the subpoena....
 
 
 48
 373 F.2d at 647.
 
 
 49
 The authorities cited in Jones do not make a persuasive case for the striking of a pleading as a permissible Rule 45 contempt sanction for failure to comply with a subpoena duces tecum. In Sperandeo, the NLRB made a motion to quash the subpoena served upon it, and the sanction of dismissal was explicitly premised upon the NLRB's noncompliance with the court order that was issued in response to that motion. See 334 F.2d at 383-85. The cited passage from Moore's is ambiguous, and none of the cases cited by Moore's supports the proposition that a pleading may be struck as a contempt penalty for non-compliance with a subpoena.
 
 
 50
 Undeniably, a valid subpoena is a legal instrument, non-compliance with which can constitute contempt of court. See Fed.R.Civ.P. 45(f). Nonetheless, "[a] subpoena, obtainable as of course from the Clerk of the Court, is not of the same order as one issued by a judicial officer in the resolution of a specific dispute." Waste Conversion, Inc. v. Rollins Envtl. Servs. (NJ), Inc., 893 F.2d 605, 608 (3d Cir.1990) (in banc).
 
 
 51
 Thus, in Fisher v. Marubeni Cotton Corp., 526 F.2d 1338 (8th Cir.1975), the court ruled (as an alternate holding) that sanctions pursuant to Rule 37(b) could not be imposed for failure to comply with a deposition subpoena duces tecum, stating that the sanction provisions of that rule "are not applicable until there has been an order by the court compelling production. There was no such order by the court below." Id. at 1341; see also In re Moskowitz, 15 B.R. 790, 793 (Bankr.S.D.N.Y.1981) (same). The court in Fisher also stated in dictum that the sanction might nonetheless be affirmed pursuant to Rule 45 (although the outcome of the appeal was a reversal for failure to provide the sanctioned party an adequate opportunity to present his position), see 526 F.2d at 1342-43, but the penalty in that case was the payment of $719.05 in costs and attorneys' fees. See id. at 1340.
 
 
 52
 The trial subpoena served upon Ekinciler was issued without any court involvement. Nor did any court proceeding take notice of the subpoena so as to transform the document request into a court order, as occurred at the July 11, 1991 hearing with respect to the discovery notices served upon Ekco. Cf. Jones, 373 F.2d at 647-48. Rule 37(a) clearly envisions some judicial intervention between a discovery request and the imposition of sanctions. That intervention serves to alert the offending party to the seriousness of its noncompliance and permits judicial scrutiny of the discovery request. The court's order also functions as a final warning that sanctions are imminent, and specifically informs the recalcitrant party concerning its obligations. A subpoena issued by counsel does not fulfill these purposes. Accordingly, it would appear inconsistent with the overall scheme of Rule 37 to view a subpoena as constituting "an order to provide or permit discovery" within the meaning of Rule 37(b)(2).
 
 
 53
 In any event, we will not uphold the Rule 37 sanctions against Ekinciler by resort to Rule 45 on this record. It is true that "we may affirm 'on any grounds for which there is a record sufficient to permit conclusions of law, including grounds not relied upon by the district court,' " Chesley v. Union Carbide Corp., 927 F.2d 60, 68 (2d Cir.1991) (quoting Larsen v. NMU Pension Trust, 902 F.2d 1069, 1070 n. 1 (2d Cir.1990)); see also United States v. Hammad, 902 F.2d 1062, 1064 (2d Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 192, 112 L.Ed.2d 154 (1990); Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir.1987). We nonetheless decline to invoke that authority to promulgate the novel rule of law for which plaintiffs-appellees contend, especially when the absence of a district court ruling occurs in an area consigned so strongly to the discretionary authority of the district court.
 
 
 54
 As the balance of this opinion should make clear, however, this disposition implies no condonation by this court of the deplorably obstructive conduct of Ekco, Ekinciler, and their counsel revealed by this record. Any failure by Ekinciler to comply with valid discovery orders issued hereafter in this case would warrant peremptory imposition of severe sanctions, in light of the history of this litigation to date. See Cine Forty-Second Street Theatre Corp., 602 F.2d at 1068 (sanctions weighed in light of full record).
 
 
 55
 B. The Appropriateness of the Sanctions Imposed.
 
 
 56
 A district court has wide discretion in imposing sanctions, including severe sanctions, under Rule 37(b)(2), and will only be reversed if its decision constitutes an abuse of discretion. Bobal v. Rensselaer Polytechnic Inst., 916 F.2d 759, 764 (2d Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 1404, 113 L.Ed.2d 459 (1991); John B. Hull, Inc. v. Waterbury Petroleum Prods. Inc., 845 F.2d 1172, 1176 (2d Cir.1988) (citing National Hockey League, 427 U.S. at 643, 96 S.Ct. at 2781; Argo Marine Sys., Inc. v. Camar Corp., 755 F.2d 1006, 1015 (2d Cir.1985)); Jones v. Niagara Frontier Transp. Auth., 836 F.2d 731, 734 (2d Cir.1987), cert. denied, 488 U.S. 825, 109 S.Ct. 74, 102 L.Ed.2d 50 (1988). Moreover, the factual findings upon which sanctions are based will not be disturbed unless they are shown to be " 'clearly erroneous.' " Thomas E. Hoar, Inc. v. Sara Lee Corp., 882 F.2d 682, 687 (2d Cir.1989) (quoting Inwood Lab. v. Ives Lab., 456 U.S. 844, 855, 102 S.Ct. 2182, 2189, 72 L.Ed.2d 606 (1982)).
 
 
 57
 The discovery provisions of the Federal Rules of Civil Procedure are "designed to achieve disclosure of all the evidence relevant to the merits of a controversy." Thomas E. Hoar, 882 F.2d at 687; see also Fed.R.Civ.P. 26(b)(1). It is intended that this disclosure of evidence proceed at the initiative of the parties, free from the time-consuming and costly process of court intervention. See Thomas E. Hoar, 882 F.2d at 687; see also Advisory Committee's Explanatory Statement Concerning Amendments of the Discovery Rules, 48 F.R.D. 487, 488 (1970). When a party seeks to frustrate this design by disobeying discovery orders, thereby preventing disclosure of facts essential to an adjudication on the merits, severe sanctions are appropriate. See National Hockey League, 427 U.S. at 643, 96 S.Ct. at 2781 (availability of severe sanctions necessary both to penalize recalcitrant parties and deter others from similar conduct); see generally Update Art, Inc. v. Modiin Publishing, Ltd., 843 F.2d 67, 73 (2d Cir.1988) (compliance with discovery orders "necessary to the integrity of our judicial process").
 
 
 58
 Applying these principles, we find that the district court's imposition of sanctions upon Ekco was wholly justified. Ekco was subject to an unequivocal order of the court requiring it to produce a witness for deposition, and to produce documents relating to that deposition. The court's order was issued at a hearing during which the scope of required discovery was fully discussed, and Ekco's objections to that discovery were explicitly rejected. The order itself was necessitated only by Ekco's inexcusable refusal to comply voluntarily with proper party-initiated discovery. The conduct of Ekco's counsel at the July 12, 1991 deposition, the repeated failure to produce demanded documents subject to an explicit court order, and Ekco's unilateral refusal to continue the deposition following a largely aborted initial session evince a willful frustration of plaintiffs-appellees' efforts to discover the true facts concerning potential alter ego liability. The district court was accordingly justified in imposing severe sanctions for this failure to comply with court-ordered discovery. See John B. Hull, 845 F.2d at 1176-77; Update Art, 843 F.2d at 71.
 
 
 59
 Ekco advances two specific arguments why the sanctions exacted in this case constitute an abuse of the district court's broad discretion. First, it asserts that prior warnings are required before these severe sanctions can be imposed. Second, Ekco contends that such sanctions are proper only in cases of "extreme circumstances," and that no extreme circumstances were present on this record. Both contentions are without merit.
 
 
 60
 There are two basic limitations upon a district court's discretion in imposing sanctions pursuant to Rule 37(b)(2). The rule expressly requires that the sanctions must be "just"; and the sanction must relate to the particular claim to which the discovery order was addressed. Insurance Corp. of Ireland v. Compagnie des Bauxites, 456 U.S. 694, 707, 102 S.Ct. 2099, 2106, 72 L.Ed.2d 492 (1982). There is no question that the latter requirement has been met. As to the former, the Supreme Court has indicated that in determining whether a sanction is "just," the record should be reviewed to ascertain whether the district court abused its discretion. See id. at 707-08, 102 S.Ct. at 2106-07 (Court reviewed events leading up to sanctions); Thomas E. Hoar, 882 F.2d at 687 (same); John B. Hull, 845 F.2d at 1176-77 (same); Niagara Frontier Transp. Auth., 836 F.2d at 735 (same); Cine Forty-Second Street Theatre Corp., 602 F.2d at 1068 (sanctions must be weighed in light of full record).
 
 
 61
 In Insurance Corp. of Ireland, the Supreme Court upheld an order deeming the facts as to personal jurisdiction to be established on a record which indicated that the defendant had engaged in repeated delay and refused to comply with court-ordered discovery. 456 U.S. at 707-08, 102 S.Ct. at 2106-07. The Court also noted that the lower court issued express warnings that sanctions would be imposed if compliance was not forthcoming. Id. at 708, 102 S.Ct. at 2107. Nowhere was it stated, however, that warnings were a requirement in every case. Rather, the Court simply indicated that the sanctions at issue were justified on the record before it, without formulating any specific requirements to be applied in all cases.
 
 
 62
 Although formal warnings often precede the imposition of serious sanctions, this court has never considered warnings an absolute condition precedent. On the contrary, as indicated supra, we have examined the record to ascertain if the party's disregard of court ordered discovery justified the sanctions imposed by the district court. We decline to hobble the necessary discretion of district courts to control discovery by imposing a further requirement of formal and specific warnings before imposing Rule 37(b)(2) sanctions, bearing in mind that, as we hold supra, such sanctions can only be imposed for violation of a specific, previously entered court order. Parties and counsel have no absolute entitlement to be "warned" that they disobey court orders at their peril.
 
 
 63
 Ekco's claim that there were not adequately "extreme circumstances" to justify the severe sanctions imposed by the district court is similarly unavailing. Strong sanctions should be imposed only for serious violations of discovery orders. See, e.g., John B. Hull, 845 F.2d at 1176-77; Niagara Frontier Transp. Auth., 836 F.2d at 734; Israeli Aircraft Indus., Ltd. v. Standard Precision, 559 F.2d 203, 208 (2d Cir.1977). Severe sanctions are justified, however, when the failure to comply with a court order is due to willfulness or bad faith, or is otherwise culpable. Luft v. Crown Publishers, Inc., 906 F.2d 862, 865-66 (2d Cir.1990); John B. Hull, 845 F.2d at 1176; Niagara Frontier Transp. Auth., 836 F.2d at 734. Although an order granting a claim and precluding a party from presenting evidence in opposition to it is strong medicine, such orders are necessary on appropriate occasion to enforce compliance with the discovery rules and maintain a credible deterrent to potential violators. National Hockey League, 427 U.S. at 643, 96 S.Ct. at 2781; see also Update Art, 843 F.2d at 71. As the record in this case amply confirms, the district court did not abuse its discretion by choosing these sanctions in the face of Ecko's willful violation of the court's discovery order and prior obstruction of discovery.
 
 
 64
 C. The Scope of Ordered Discovery.
 
 
 65
 Ekco further argues that sanctions were improper because the court's discovery order was overly broad. Where the information sought is not properly discoverable, a district court may not impose sanctions for non-compliance with an order requiring its production. Fonseca v. Regan, 734 F.2d 944, 948 (2d Cir.), cert. denied, 469 U.S. 882, 105 S.Ct. 249, 83 L.Ed.2d 186 (1984). In the present case, however, the required discovery was adequately related to the issue of alter ego liability.
 
 
 66
 The standard for determination of this issue is provided by Fed.R.Civ.P. 26(b)(1), which states in pertinent part:
 
 
 67
 Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party.... It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.
 
 
 68
 This obviously broad rule is liberally construed. See Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978) (relevance under Rule 26(b)(1) broadly construed "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case"); Morse/Diesel, Inc. v. Fidelity & Deposit Co., 122 F.R.D. 447, 449 (S.D.N.Y.1988) (term "reasonably calculated" in the quoted provision means " ' "any possibility that the information sought may be relevant to the subject matter of the action" ' ") (quoting Mallinckrodt Chem. Works v. Goldman, Sachs & Co., 58 F.R.D. 348, 353 (S.D.N.Y.1973) (quoting Charles A. Wright, Law of Federal Courts § 81, at 359 n. 47 (2d ed. 1970))) (emphasis added in Mallinckrodt ).
 
 
 69
 In this case, plaintiffs-appellees had the burden of establishing an alter ego relationship among Ektrans, Ekco, and Ekinciler. This could require them to show that one corporation so dominated another that the latter's distinct corporate personality should be disregarded. See, e.g., William Wrigley Jr. Co. v. Waters, 890 F.2d 594, 600 (2d Cir.1989) (applying New York law). Factors which are relevant to such a showing include: (1) intermingling of corporate funds; (2) under-capitalization of one of the corporations; and (3) failure to maintain separate books and records or observe other legal formalities. Id. (citations omitted). The discovery order was closely related to these factors of corporate control.
 
 
 70
 The July 11, 1991 order required Ekco to comply with the notices of deposition and subpoenas duces tecum served by plaintiffs-appellees. This discovery related directly to the issue of alter ego liability. The discovery notices sought basic corporate records, and documents (1) concerning banking and other financial transactions, (2) relating to transactions between the corporations, and (3) relating to corporate assets. The deposition was largely focused on issues of corporate ownership and control. In sum, the discovery sought adequately tracked plaintiffs-appellees' burden of proof on the alter ego issue.
 
 
 71
 Ekco counters that "alter ego" liability is properly determined as of the time of the transaction at issue in the case, and therefore records and documents from years subsequent to 1987, when the events at issue had concluded, were not discoverable. However, it was reasonable to conclude, as the district court did, that information from subsequent years could help piece together the earlier picture. We are persuaded that information concerning financial transactions and movements of corporate assets subsequent to the transaction giving rise to this litigation was "reasonably calculated to lead to the discovery" of evidence admissible on the issue of alter ego liability within the meaning of Rule 26(b)(1).
 
 
 72
 D. The Requirements of "Alter Ego" Liability.
 
 
 73
 Ekco's final argument is that the district court imposed sanctions based upon an erroneous interpretation of the requirements of "alter ego" liability, pointing to a colloquy during the July 16, 1991 hearing which assertedly establishes that the court took too relaxed a view of those requirements. We reject Ekco's effort to construe this rather casual discussion as a definitive expression of the district court's views concerning alter ego liability. More fundamentally, however, this contention misconstrues the nature and function of the sanctions imposed in this case.
 
 
 74
 Plaintiffs-appellees were precluded from any attempt to prove the elements of "alter ego" liability by Ekco's willful failure to comply with discovery orders. It is the relationship between this misconduct and plaintiffs-appellees "alter ego" claim that provides the rationale for the Rule 37(b)(2) sanctions imposed by the district court. See Insurance Corp. of Ireland, 456 U.S. at 707, 102 S.Ct. at 2106 (Rule 37(b) sanction must be specifically related to claim at issue in the order to provide discovery).
 
 
 75
 Had Ekco not intentionally frustrated the discovery process, an adjudication on the merits would have been possible. In view of Ecko's misconduct, the district court justifiably entered an order taking as established the claim whose proper adjudication Ekco deliberately endeavored to frustrate, and precluding Ekco from offering contrary evidence. In these circumstances, the precise requirements of alter ego liability are irrelevant to an assessment of the propriety of the district court's action.
 
 Conclusion
 
 76
 The order and judgments of the district court are affirmed as to Ekco, but reversed as to Ekinciler and remanded for further proceedings not inconsistent with this opinion. The mandate shall issue forthwith. The parties shall bear their own costs.
 
 
 
 [1]
 In Penthouse Int'l, Ltd. v. Playboy Enters., Inc., 663 F.2d 371, 389 (2d Cir.1981), we said that "it is doubtful whether sanctions for non-production of documents could be imposed without ... first obtaining a Rule 37(a) order for their production." We went on to affirm the sanction of dismissal, see id. at 391-92, noting that the district court order in that case "was issued pursuant to Rule 37(a)." Id. at 390. In fact, it appears clear that the district court order, which occurred during a trial recess, was not issued pursuant to Rule 37(a). See id. at 382-83. In any event, we do not regard Penthouse Int'l as having established a Second Circuit rule that only violation of a Rule 37(a) order may be the subject of Rule 37(b)(2) sanctions, contrary to the text of the rule, the authoritative commentary in the advisory committee's note, numerous rulings in other circuits, and our ruling in Jones. We note that, contrary to any apparent intent to undermine the authority of Jones, Penthouse Int'l cited Jones for the proposition that an oral order, not entered pursuant to a formal written Rule 37(a) motion, may nonetheless have binding force and effect. See 663 F.2d at 388
 
 
 [2]
 Although the district court's oral order referred explicitly only to the production of a witness, it was surely understood that the witness was to bring with him the documents under deposition subpoena. In any event, the testimony of the witness was obstructed as described supra, including the flat refusal to produce the witness for a continued deposition after the initial abortive session