**FONAR CORPORATION, Plaintiff,**

v.

**MAGNETIC RESONANCE PLUS, INC., and Robert Domenick, Defendants.**

**No. 93 Civ. 2220 (CBM).**

United States District Court, S.D. New York.

Aug. 3, 1995.

---

Shiff & Tisman by Laurence Shiff, Scott A. Fields, New York City, for plaintiff.

Coudert Brothers by Lateef Mtima, New York City, for defendants.

## MEMORANDUM OPINION

MOTLEY, District Judge.

### I. Background.

This copyright infringement case was filed on April 7, 1993. More than two years later, on June 22, 1995, Plaintiff's founder and president, Dr. Raymond Damadian, had never submitted to a deposition by the Defendants, although requested by Defendants to do so and although specifically ordered by this court to do so on April 20, 1995. On April 20 this court issued an order after a two-hour pre-trial conference on the issue of uncompleted depositions which provided that Dr. Damadian was to be deposed by Defendants during the week of May 22, 1995. However, Dr. Damadian never complied with this explicit directive of this court and after a hearing has failed to offer a reasonable and justifiable explanation for his failure to appear for his deposition. This court, therefore, finds and concludes that Dr. Damadian's failure to appear for his deposition was not justified and that his lawyer was the architect of the pattern of evasion which the evidence in this record discloses. At the court's urging, Defendants filed a formal written motion for discovery sanctions on June 27, 1995 pursuant to Rule 37(b) of the Federal Rules of Civil Procedure. Plaintiff was given an opportunity to answer. The court heard oral argument on this motion on July 18, 1995. As discussed below, Plaintiff has failed to provide anything even resembling a sufficient justification for Dr. Damadian's noncompliance. Therefore, Defendants' motion is granted and the requested sanction of $14,147.00 in counsel fees for its effort in trying to get Dr. Damadian's deposition and then arguing this motion will be imposed.

In addition, the court imposes a fine of $500.00 on Plaintiff's counsel, Laurence Shiff, for his role in Dr. Damadian's failure to appear for his deposition.

### II. The History of Dr. Damadian's Evasions.

The record in this case shows one stratagem after another invoked by the Plaintiff to avoid having its president, Dr. Raymond Damadian, deposed by the Defendants. Plaintiff was initially ordered on September 29, 1994, more than a year after suit was filed, to begin producing its employees for such deposition during the week of October 24, 1994. However, Plaintiff failed to comply with the court's Pre–Trial Schedule and Order and instead requested a ninety-day extension of the discovery cut-off date for the case.

After obtaining the requested extension, in November of 1994 Plaintiff agreed to produce Dr. Damadian for deposition. Nevertheless, Plaintiff twice cancelled Dr. Damadian's deposition, each time on the very night before it was scheduled to commence. On both occasions, Plaintiff acted with the awareness that Defendants' counsel, who resided in California, had flown from San Francisco, California to New York each time for the express purpose of deposing Dr. Damadian the next day.

Plaintiff's next tact was to suddenly substitute Dr. Damadian's son Timothy as the deposition witness. Dr. Damadian was originally designated as Plaintiff's Rule 30(b)(6) witness. (*See* Letter of November 7, 1994 from Lateef Mtima, Esq. to Scott Fields, Esq.) Timothy Damadian subsequently testified that he had little direct knowledge of the factual allegations in the Complaint, thus demonstrating that Defendants had wasted both time and money preparing for his deposition.

Defendants later, specifically, noticed the deposition of Dr. Raymond Damadian to commence on February 28, 1995. Plaintiff continued in its intransigence and refused to produce its president. On March 27, 1995, the court granted Plaintiff an additional thirty-day extension of discovery. Ultimately, on April 20, 1995, after a lengthy pre-trial conference regarding unfinished depositions by both parties, the court issued an order directing, in part, that Dr. Damadian was to appear for his deposition during the week of May 22, 1995.

In accordance with the terms of the court's order, on April 27, 1995, Defendants noticed Dr. Damadian's deposition to commence on May 23, 1995. Following what this court finds was his customary fashion, Plaintiff's counsel, Mr. Laurence Shiff, waited until May 23, 1995 to fax a lengthy letter to the court announcing that his client would be unavailable for the entire week of May 22 through May 26, 1995 due to his involvement as a witness in a trial before another court. Mr. Shiff was not Dr. Damadian's counsel in the other case. At the hearing on the instant motion, Mr. Shiff pointed to a docket report from that other case which shows that that trial indeed continued throughout the week in question. However, there is no evidence in the record to establish that Dr. Damadian was present, or was even required to be present, during each and every day of that trial. Mr. Shiff was not present during that trial. Moreover, Plaintiff offers no reason why Dr. Damadian's deposition could not be conducted during the evenings after the daily trial sessions were complete.

Mr. Shiff claims that he tried valiantly to accommodate the spirit, if not the letter, of this court's April 20, 1995 order. In this regard, he notes that he offered to make Dr. Damadian available during the week of May 29, 1995 *on the condition that the time for his deposition be limited in advance to one day only,* but that Defendants refused to accept this offer. (R. at 33–35.) This argument overlooks two essential points. First, Defendants were in no way obligated to accept a condition limiting Dr. Damadian's deposition before they knew what he had to say. Second, Plaintiff's position disregards the fundamental issue that it is the court, not the deponent, that has the authority to dictate limitations of the sort Mr. Shiff proposed.

Also concerning the week of May 22, Plaintiff asks the court to take note of the fact that it did produce five of the six witnesses that the April 20 order directed it to make available. Plaintiff suggests that this constitutes substantial compliance with the order. This, however, is aside from the point. Plaintiff was required to produce Dr. Damadian but chose not to do so; compliance with other parts of the order is not sufficient to excuse Plaintiff's failure.

Finally, concerning the period of time after the week of May 29, Mr. Shiff states that he and his client should be excused because on June 6, 1995 Mr. Shiff's mother had a stroke which necessitated a two-week hospital stay during which Mr. Shiff spent virtually all of his time caring for her. While the court is, without question, sympathetic to any litigant who is faced with a family trauma, Mr. Shiff did not see the need to inform the court of his predicament until June 22, 1995 during a pre-trial conference held for the purpose of resolving the very problems which have resulted in the present sanction motion. (R. at 31–32.) Again, the problem is that Plaintiff's counsel continues to confuse the relative roles of litigants and the court in setting the discovery schedule in a case. The record supports Defendants' claim that the discovery process is being abused in this case by Plaintiff to harass Defendants.

## III. The Standards for Imposing Sanctions Pursuant to Rule 37(b).

Rule 37(b) of the Federal Rules of Civil Procedure provides in pertinent part as follows:

If a deponent fails to be sworn or to answer a question after being directed to do so by the court in the district in which the deposition is being taken, the failure may be considered a contempt of that court. . . . If a party or an officer, director, or managing agent of a party . . . fails to obey an order to provide or permit discovery . . . the court in which the action is pending may make such orders in regard to the

failure as are just.... [T]he court shall require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust. Fed.R.Civ.P. 37(b).

The Second Circuit has made it abundantly clear that Rule 37 empowers the District Courts with a broad discretion to impose sanctions of sufficient severity to deter misconduct during discovery. Thus, in *Sieck v. Russo,* 869 F.2d 131, 134 (2d Cir.1989), the court noted that a standard that unduly discouraged District Courts from imposing harsh sanctions would reduce Rule 37 to a mere "'paper tiger'" that could produce compliance from intransigent lawyers and parties only when their backs were against the wall. *See also Update Art, Inc. v. Modiin Publishing, Ltd.,* 843 F.2d 67, 71, 73 (2d Cir.1988); *Cine Forty–Second Street Theatre Corp. v. Allied Artists Pictures Corp.,* 602 F.2d 1062, 1068 (2d Cir.1979). That is what occurred here. Only after the first hearing in this case on June 28, 1995 following which the court had imposed a $10,000.00 sanction on Plaintiff and a $500.00 fine on his lawyer did Dr. Damadian appear for his deposition on July 12, 1995. A second hearing was held on July 18, 1995 since there was no official court reporter present on June 28, 1995. It is for this reason that rulings under Rule 37 are reviewed under the modest standard of abuse of discretion. *Sieck,* 869 F.2d at 134.

As a result of Plaintiff's deliberate strategy of delay and avoidance, both the court and the defendants have been needlessly burdened with numerous discovery conferences and a veritable flood of faxes and lengthy letters regarding the scheduling of Dr. Damadian's deposition as well as various other mundane discovery matters which should not require judicial intervention. Many of Plaintiff's tactics, such as the substitution of Dr. Damadian's son, Timothy, as their deposition witness, have forced Defendants to waste valuable attorney time. Consequently, the discovery cut-off date for this case has had to be extended on multiple occasions. The rule in this Circuit is that the expense of such frivolous protractions, including any resulting motion practice, should be borne by the party culpable for the delay. *See Amsler v. Corwin Petroleum Corp.,* 715 F.Supp. 103, 106 (S.D.N.Y.1989) ("Rule 37(b) provides that a party failing to comply with court-ordered discovery shall bear the costs caused by the failure[, including] ... the costs incurred by [the other party] in making ... [a] motion for sanctions.") (footnote omitted).

In *Daval Steel Products v. M/V Fakredine,* 951 F.2d 1357 (2d Cir.1991), Judge Owen of this District imposed Rule 37(b) sanctions on a defendant that had disregarded a court order to comply with subpoenas to produce documents at deposition. In upholding this decision, the Second Circuit emphasized the fact that the trial court's order "was necessitated only by [Defendant's] inexcusable refusal to comply voluntarily with proper party-initiated discovery." *Id.* at 1366. The *Daval* court's opinion relied heavily on the policy of the Federal Rules of Civil Procedure to free the District Courts from day-to-day involvement with the minutiae of discovery:

> The discovery provisions of the Federal Rules of Civil Procedure are "designed to achieve disclosure of all the evidence relevant to the merits of a controversy." It is intended that this disclosure of evidence proceed at the initiative of the parties, free from the time-consuming and costly process of court intervention. When a party seeks to frustrate this design by disobeying discovery orders, thereby preventing disclosure of facts essential to an adjudication on the merits, severe sanctions are appropriate.

*Id.* at 1365 (citations omitted).

In the course of the instant case, Plaintiff and its counsel, Mr. Shiff, have consistently shown an arrogant disregard both for the valid requests of the Defendants and for the authority of this court. Litigation cannot be conducted in this fashion. Thus, the court concludes that the Defendants have properly requested sanctions and the request will therefore be granted.

## CONCLUSION

For all of the above reasons, Defendant's motion for sanctions in the form of $14,147.00 in counsel fees pursuant to Rule 37(b) of the Federal Rules of Civil Procedure is granted. Plaintiff is to bear the costs, including attorney's fees, incurred by Defendants in connection with the delays of the deposition of Dr. Raymond Damadian. In addition, Plaintiff's counsel is to be separately fined by the court for his role in his client's actions in disobeying the order of this court.